**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joseph COLLON, Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John GARSIDE, Defendant-Appellant.**

**Nos. 19758, 19759.**

United States Court of Appeals,
Sixth Circuit.

May 28, 1970.

Thomas A. Conroy (court appointed), Cincinnati, Ohio, on brief for defendant-appellant Collon.

H. Fred Hoefle (court appointed), Norwood, Ohio, on brief for defendant-appellant Garside.

Ralph B. Guy, Jr., Chief Asst. U. S. Atty., Detroit, Mich., for plaintiff-appellee; James H. Brickley, U. S. Atty., Detroit, Mich., on the brief.

Before CELEBREZZE, COMBS and BROOKS, Circuit Judges.

BROOKS, Circuit Judge.

The two defendants-appellants, John Garside and Joseph Collon, appeal from their conviction of bank robbery in violation of Title 18 U.S.C. § 2113(d)). Since both defendants challenge the sufficiency of the evidence to sustain the guilty verdicts, it is necessary to summarize it in some detail.

Neither of the defendants took the stand and the only defense testimony introduced was that of one alibi witness called by the defendant Collon. The evidence introduced by the government, other than the clear proof of the robbery and the getaway, was primarily circumstantial.

On January 26, 1968, a branch of the Commonwealth Bank located in Westland, Michigan was robbed. The robbery was by two armed men wearing black ski jackets and ski masks that concealed their faces, except for their eyes and mouths. During the robbery, one of the robbers threatened bank employees with his .38 caliber revolver, and it is not disputed that the lives of some employees were placed in jeopardy. When the robbers entered the bank, the manager and three tellers were present and a customer entered while the robbery was in progress. The bank manager and two of the bank tellers testified that the bank robbers were white, young and of medium build. Their testimony was also in agreement that the getaway car was a 1960 or 1961 bluish-green Ford. Before leaving, the robbers had herded the occupants of the bank into a room which had a view of the parking lot in which the getaway car was parked. The getaway car stalled while the robbers were leaving and bank teller Daniel had a particularly good view of it and was able to testify that it was a Fairlane Ford.

When the getaway car left the bank, it headed in the direction of an adjacent residential subdivision, and shortly after the robbery a bluish-green 1961 Ford parked at the curb on Arrowhead Street in the adjacent subdivision was identified by Daniel as the getaway car.

Local police and F.B.I. agents were on the scene very shortly after the robbery and made an immediate investigation of the Arrowhead Street area where the car had been abandoned. At trial, it was testified that one of the residents had seen two young, white men unsuccessfully attempt to start a neighbor's car, and then leave it to run to another neighbor's house, dropping a black ski jacket on the way. Subsequently, she saw the two men drive off in a Dodge automobile owned by another neighbor, David Tague.

Another resident of Arrowhead Street found a ski mask on her front porch. David Tague testified that he heard what he believed to be a pounding at his side door and before he could open it two men entered the front door of his house and, at gun point, took from him his keys to his 1960 Dodge automobile. He could not give a detailed description of the men other than that they were white and shorter than his height of 6′1″. He did testify that one of the robbers brandished a .38 caliber pistol. After the men left, Tague discovered what he thought was a pounding at his side door was in fact gun shots. There were four bullet holes in the door, and when his car was later recovered, he found in it a .38 caliber cartridge. A ballistic expert testified at the trial that the bullets fired into the door of Tague's house were .38 caliber and that his ballistic comparison indicated that the cartridge later found in the Dodge automobile and the bullets fired into the Tague door could have been fired from the same weapon.

The government's testimony further developed that a search of the 1961 Ford had uncovered an advertisement from the Commonwealth Bank, a map of the metropolitan Detroit area which had certain locations marked with X's, one of the locations being that of the Commonwealth Bank and some rubber gloves. This car was also dusted for fingerprints, and a fingerprint was developed from the rear seat armrest which was identified as that of the defendant Collon. Fingerprints were also obtained from the map and the fingerprint analysis revealed five fingerprints and three palm prints to be those of the defendant Garside. There were also other fingerprints on the map identified as those of the defendant Collon.

The Dodge automobile in which the two men left the subdivision area was found shortly after its theft and a search

of the car revealed a black ski jacket, some spent .38 caliber cartridges, rubber gloves, and a torn one-half pants leg. The torn pants leg that was found was analyzed by the government experts who testified that certain body hairs in the pants leg matched with hairs taken from defendant Collon. At trial, it was also testified that the second pair of rubber gloves found in the 1960 Dodge were of the same brand and color as the pair found in the 1961 Ford, and that one of the gloves in the 1961 Ford, size 8½, appeared to be the mate of one of the rubber gloves found in the 1960 Dodge.

Government witnesses established that four days before the bank robbery the 1961 Ford getaway car was purchased from a used car lot. James Wyrick, the salesman, identified defendant Collon as the purchaser and said that he was accompanied by three other men he could not identify. The day after the purchase three men came back to the used car lot to obtain a permanent license for the Ford. The mechanic who installed the license made a courtroom identification of Collon, as did the mechanic's uncle who was present when the dealer's tags were replaced by the permanent license.

There is no question in this case but that the bank was robbed by two masked men and the lives of bank employees were placed in jeopardy. There is also overwhelming evidence to establish that the two bank robbers who fled from the bank in the 1961 Ford were the same men who, at gun point, obtained the keys to the Dodge car in which they made their final escape. The critical issue was one of the identity of the robbers, and the burden was upon the government to establish this essential element of the crime beyond a reasonable doubt as to each of the two defendants.

 Insofar as the defendant Collon is concerned, we find that the government sustained this burden. Collon was identified by three witnesses at the used car lot as the purchaser of the 1961 Ford that several days later was at the scene of the crime and was used as the initial getaway car. Government experts testified that his fingerprints were lifted from the getaway car and from the map which was in the car which showed the location of the bank that was robbed. The torn pants leg found in the 1960 Dodge, the car stolen by the robbers after abandoning the 1961 Ford, contained body hairs matching Collon's body hairs.

There was the testimony relating to the display of a .38 caliber revolver in the bank and the use of a similar weapon to obtain keys to the Dodge car, as well as the finding of the spent .38 caliber cartridges and the ski jacket in the Dodge car. There was also the testimony as to the similarity between the rubber gloves recovered from each of the two getaway cars. Collon met the general description of the robber by witnesses as being a young, white man of medium height and build. So there was substantial evidence from which a properly instructed jury could determine that the defendant Collon participated in the robbery of the Commonwealth Bank. Therefore his motion for a judgment of acquittal was properly denied.

The evidence identifying the co-defendant Garside as one of the bank robbers is weak. Other than meeting the general description of a young, white man of medium height and build, the only evidence that he may have participated in the robbery was his finger and palm prints on the map found in the Ford getaway car.

The map, marked with the location of the robbed bank, was an ordinary road map readily available from service stations and was four or five years old. The government fingerprint expert testified that the fingerprints could have been on the map for an indefinite period of time, at least for many months. He also stated that the pencil marks on the map indicating various locations could have been placed there either before or after the prints were imprinted.

Clearly, the mere presence of this map in the getaway car did not place the defendant Garside in the car at the scene

of the robbery, or for that matter at any other time. The map could have been innocently handled by him months before the robbery and found its way into the car in any number of ways without his participation or knowledge.

Under these circumstances Garside contends that his fingerprints on the map, which is the only evidence to link him to the robbery, is not sufficient evidence upon which a reasonable mind might conclude guilt beyond a reasonable doubt. He insists his motion for acquittal should have been sustained.

■ In determining the sufficiency of the evidence to withstand a motion for a judgment of acquittal, the evidence and all reasonable inferences that may be drawn therefrom must be viewed in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), rehearing denied, Kretske v. United States, 315 U.S. 827, 62 S.Ct. 629, 86 L.Ed. 1222; United States v. Smith, 399 F.2d 896 (6th Cir. 1968); United States v. Carabbia, 381 F.2d 133 (6th Cir. 1967), cert. denied 389 U.S. 1007, 88 S.Ct. 564, 19 L.Ed.2d 602. And if under such view of the evidence it is concluded that a reasonable mind might fairly find guilt beyond a reasonable doubt, the issue is for the jury. However, if under such view of the evidence it is concluded there must be some doubt in a reasonable mind, the motion for acquittal must be sustained. United States v. Gaines, 353 F.2d 276 (6th Cir. 1965); United States v. Conti, 339 F.2d 10 (6th Cir. 1964); Curley v. United States, 81 U.S.App.D.C. 389, 160 F.2d 229 (1947), cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850.

In Hiet v. United States, 124 U.S.App.D.C. 313, 365 F.2d 504 (1966), an automobile had been broken into and some contents stolen. Fingerprints of the defendant were found on the inside of an open vent window. Since the only evidence against the defendant were his fingerprints and there was no testimony as to their probable age, it was reasoned that the prints could have been innocently impressed while the car was parked on the street. Holding by a divided court that the prints raised only a suspicion and that guilt must be established beyond a reasonable doubt, the conviction was set aside.

In Borum v. United States, 127 U.S. App.D.C. 48, 380 F.2d 595 (1967), a coin collection was stolen from the second floor closet of a private home. Fingerprints of the defendant were found on some of the glass jars containing the coins. There was evidence the prints could have been on the jars for an indefinite period of time. The defendant's conviction for housebreaking was set aside, again by a divided court, on the grounds that the jury verdict was based upon speculation. It was reasoned that since no evidence was introduced by the government showing the jars were generally inaccessible to the defendant, the fingerprints may have been innocently imprinted upon them.

■ These two authorities relied upon by the defendant Garside more than support his contention that the fingerprint proof against him in this case was not sufficient evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt. And we hold on the particular facts of this case that the motion of Garside for a verdict of acquittal should have been sustained.

Other issues presented are found to be without merit.

The judgment of conviction of the defendant Collon is sustained, the judgment of conviction of the defendant Garside is reversed.