Millard Robert **BEASLEY**, Petitioner-Appellant,

v.

**UNITED STATES** of America, Respondent-Appellee.

No. 73-1351.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 15, 1973.

Decided Feb. 1, 1974.

Edward M. Keller, Detroit, Mich. (Court-appointed), for petitioner-appellant.

Barry Blyveis, Dept. of Justice, Washington, D. C., for respondent-appellee; Ralph B. Guy, Jr., U. S. Atty., Dept. of Justice, Washington, D. C., Fred M. Mester, Asst. U. S. Atty., Chief, Civil Div., Detroit, Mich., on brief.

Before EDWARDS, CELEBREZZE and McCREE, Circuit Judges.

CELEBREZZE, Circuit Judge.

In a non-jury trial of February 20, 1969, a Federal District Court convicted Petitioner of attempted armed bank robbery. A direct appeal raising numerous points was dismissed by this Court without oral hearing. United States v. Beasley, 438 F.2d 1279 (6th Cir. 1971). A petition for rehearing was denied. Petitioner then filed a Motion to Vacate Sentence and Judgment in the District Court, claiming ineffective assistance of his appointed counsel before and during trial and on appeal. He further contended unlawful government withholding of evidence at trial. The District Court held that Petitioner had not been denied the Sixth Amendment right to the effective assistance of counsel before and during trial because his attorney's performance had not rendered the trial a "farce and a mockery, shocking to the Court," although it found that Petitioner had been afforded "incompetent and ineffective representation." [1] The District Court held that Petitioner had been denied the Sixth Amendment's protection on his direct appeal, because his attorney had failed to cite an important recent case which Petitioner himself had brought to his attorney's attention. It did not grant relief, however, because it was unsure whether this Court would have granted Petitioner's direct appeal if it had been apprised of the citation in question at that time. Finally, the District Court held that although the Government had improperly withheld certain evidence from the defense at trial, the evidence was not material.

■ Petitioner appeals on all three points. On the third point, the District Court's conclusion that the improperly withheld evidence was not material is not clearly erroneous. While we reaffirm our conclusion in United States v. Young, 426 F.2d 93, 94 (6th Cir. 1970), that "knowing suppression by the prosecution of exonerating evidence renders a conviction constitutionally infirm," and condemn the Government's failure to make the withheld evidence available to the defense, we cannot say that the withholding of evidence in this case renders Petitioner's conviction constitutionally defective. The evidence was not exonerating.

Petitioner's basic argument is that he was denied the effective assistance of counsel, before and during trial and on appeal. If Petitioner was convicted without the effective assistance of counsel required under the Sixth Amendment as interpreted by the courts, he is entitled to relief under 28 U.S.C. § 2255.[2]

---

1. Beasley v. United States, Opinion and Order, Civ. Action No. 37703 (E.D.Mich., filed Jan. 26, 1973).

2. Section 2255 of Title 28 U.S.C. provides:
   A prisoner in custody under sentence of a court established by Act of Congress

The Sixth Amendment claim must, of course, stand on its own merits. It should not be a mere disguise for questions disposed of on direct appeal. Van Buskirk v. United States, 343 F.2d 158 (6th Cir. 1965).

■ In arguing that he was denied the effective assistance of counsel on appeal, Petitioner is, in essence, rearguing the sufficiency of identification evidence. In deciding his direct appeal, we wrote:

> [T]he Appellant was identified as the holdup man by his latent palm print, which was discovered on the note he passed into the teller's window, and by the stylized lettering of the note, which could have been stenciled with a lettering guide ruler to which the Appellant had access. This evidence was sufficient to establish his identity beyond a reasonable doubt. United States v. Beasley, 438 F.2d 1279, 1281 (6th Cir. 1971).

We might have added that one *res gestae* witness testified that Petitioner "resembled" the attempted robber and that no rebuttal evidence was presented as to identification. The additional evidence and the fact that Petitioner's fingerprints could not plausibly have been placed on the demand notes in an innocent manner distinguish this case from United States v. Collon, the case defense counsel failed to cite in his appellate brief. In United States v. Collon, 426 F.2d 939 (6th Cir. 1970), fingerprint evidence was the *sole* reliable evidence linking one defendant to the crime, and the fingerprints could have been innocently placed on the document in question in many plausible ways. Though the *Collon* case might have helped Petitioner's appeal, it is clearly distinguisha-

ble. We find no prejudicially ineffective assistance of counsel because of its absence.

Turning finally to the claim of ineffective assistance of counsel before and during trial, the question we are faced with is how ineffective and incompetent an attorney's representation of a criminal defendant must be before an accused's Sixth Amendment right is violated. The District Court found that Petitioner's attorney had been incompetent and ineffective in several respects.

First, Counsel called as the sole defense witness (except for Petitioner) an FBI agent described by the District Court as:

> "a man whom petitioner has advised counsel, prior to trial, is 'out to get me;' a man who is not a *res gestae* witness; a man who is employed by the opposing party to the suit, and was not an agent on the case; a man whose only knowledge of petitioner's *modus operandi* came from information supplied by petitioner himself, a man whom the attorney, himself, has called a liar and perjurer on the witness stand only two months before trial; a man who is called as a witness without having been interviewed by counsel to discover what testimony he could give; a man who has interviewed petitioner and taken a statement, damaging to petitioner, which counsel has just read before calling this witness." [3]

Calling this witness made sense only in the context of a bizarre defense strategy which the District Court characterized as "highly implausible." Defense counsel's only conceivable rationale for calling this antagonistic witness was to embarrass the Government by showing how

claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, . . . or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence. . . .
 If the court finds . . . that there has been such a denial or infringe-

ment of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

3. District Court Opinion, 9–10.

zealous this FBI agent had been and to support the theory that a "pro" like Petitioner would not have pulled an amateurish operation like the attempted robbery in this case. The trial judge gave no credence to this strange defense reasoning. Calling the FBI agent, furthermore, allowed the prosecution to introduce damaging evidence of a past criminal record. The witness was called over Petitioner's protests to his attorney. His testimony did nothing but support Petitioner's guilt and criticize his character. The witness testified without advance questioning by defense counsel as to what he might say. The District Court found that it was "incompetency" to call this witness.

Second, the District Court found defense counsel incompetent not to have informed Petitioner that the trial judge had read a prejudicial statement about him that could not have been introduced at trial. Counsel advised Petitioner to waive a jury trial because he had expert fingerprint testimony that a jury would not understand and because he was too ill to withstand the rigors of a jury trial. Petitioner thus waived his right to a jury in ignorance of the fact that the judge who would hear his case had read a damaging FBI report.

Third, although the trial judge ordered the Government to pay for an independent test of the fingerprint evidence, counsel never requested one. Evidence not disclosed until October 11, 1972, indicates that an independent test would have revealed a defect in the Government's crucial fingerprint evidence. At trial the Government introduced a corner of one of the two demand notes the attempted robber had handed to the bank teller, which contained six prints identified as Petitioner's. A Detroit Police expert testified on October 11, 1972, that tests run one day after the attempted robbery disclosed only two partial prints, neither of which was Petitioner's. Another print, not Petitioner's, was found on the fake "bomb" used in the attempted robbery. This evidence, never disclosed to Petitioner, would have tended to rebut the Government's fingerprint evidence. The man who could have disclosed this was called to the courtroom by defense counsel but was never called to the stand. Thus, although counsel had urged Petitioner to waive a jury trial because of complicated fingerprint testimony, he never used the favorable rebuttal evidence available and left the Government's identification of Petitioner unchallenged.

Fourth, there were several *res gestae* witnesses who were never called to testify, though they would have testified that they could not identify petitioner as the attempted robber. Because their testimony would not have aided the prosecution, the Government did not summon them. Defense counsel did not call them because he was under the mistaken belief that it was the Government's responsibility to subpoena all *res gestae* witnesses, the practice in Michigan state courts but not in federal courts.

Fifth, defense counsel was "suffering from pain shortly before the trial," which the District Court cited as an additional circumstance to consider.

Sixth, defense counsel failed to interview any *res gestae* witnesses before trial other than the one who gave mildly favorable testimony for the prosecution.[4]

Seventh, counsel conducted "no more than a cursory investigation of the facts prior to trial."[5] An alibi witness whom Petitioner had asked counsel to interview died before trial and without having been contacted by counsel, thus depriving Petitioner of his testimony in any form.

In concluding that despite these instances of incompetence and ineffectiveness Petitioner was not deprived of his

4. The sole *res gestae* witness who testified said that Petitioner "resembled" the attempted robber, without being reasonably certain that he was the one.

5. District Court Opinion, 13.

Sixth Amendment right to the effective assistance of counsel, the District Court found that these instances had not rendered the trial "a farce and a mockery, shocking to the Court." We are asked to determine whether the "farce and mockery" phrase is a mere metaphorical gloss, a conclusory description, or a constitutional criterion which would require a denial of relief to a defendant whose attorney was ineffective and incompetent.

Phrases often take on a life of their own. Divorced from the context in which they were born, they spawn new results based on interpretations of themselves, rather than on a close scrutiny of the actual holding for which they were a description.[6] Each case must stand on its own merits, and our application of constitutional rules must always relate back to the language and policies of the Constitution. The phrase "farce and mockery" has no obvious intrinsic meaning. What may appear a "farce" to one court may seem a humdrum proceeding to another. The meaning of the Sixth Amendment does not, of course, vary with the sensibilities and subjective judgments of various courts. The law demands objective explanation, so as to ensure the even dispensation of justice.

In this case the District Court found that Petitioner had been denied the competent and effective assistance of counsel in many respects. Whether this denial constituted a violation of Petitioner's Sixth Amendment right depends on the meaning of effective assistance of counsel.

The Sixth Amendment guarantees that a criminal defendant shall enjoy the right "to have the Assistance of Counsel for his defence." This guarantee was first interpreted by the Supreme Court to mean the *effective* assistance of counsel in Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).[7] Justice Sutherland, *Powell's* author, went beyond a formal requirement that counsel be appointed, holding that the trial judge's failure "to make an effective appointment of counsel" had resulted in the "denial of effective and substantial aid. . . . [D]efendants were not accorded the right of counsel in any substantial sense." 287 U.S. at 53, 71, 53 S.Ct. at 65.

Eight years later, speaking through Justice Black, the Court held that "The Constitution's guarantee of assistance of counsel cannot be satisfied by mere formal appointment." Avery v. Alabama, 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940). Resting its holding on the Fourteenth Amendment, since a state defendant was involved, the Court held that the trial Court's denial of a continuance requested by appointed counsel had not deprived the defendant of the effective assistance of counsel. On the facts of the case, "His appointed counsel . . . have performed their 'full duty intelligently and well.'" 308 U.S. at 450, 60 S.Ct. at 324. In Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the Court enforced the implication of *Avery* that an inadequate performance by counsel would render a conviction void. Basing its holding on the Sixth Amendment, since a federal defendant was involved, the *Glasser* court overturned a conviction of a defendant whose attorney was retained by a co-defendant with a potentially inconsistent defense.[8]

Our examination of the record leads to the conclusion that [the attorney's] representation of Glasser was not as effective as it might have been if the

---

6. *See generally* D. Mellinkoff, The Language of the Law (1963).

7. For a history of the development of standards of "effective assistance of counsel," *see* Waltz, "Inadequacy of Trial Defense Representation as a Ground for Post-conviction Relief in Criminal Cases," 59 Nw.U.L.Rev. 289 (1964).

8. The Court went beyond a mere holding that a conflict of interest alone was involved. "Irrespective of any conflict of interest, the additional burden of representing another party may conceivably impair counsel's effectiveness." 315 U.S. at 75, 62 S.Ct. at 467.

appointment had not been made. We hold that the court thereby denied Glasser his right to have the effective assistance of counsel, guaranteed by the Sixth Amendment. 315 U.S. at 76, 62 S.Ct. at 468.

The Court emphasized the fundamental nature of the constitutional requirement of effective assistance of counsel by refusing to allow inquiry into the question of harmless error. "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." 315 U.S. at 76, 62 S.Ct. at 467.

Three years later, in White v. Ragen, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348 (1945), the Supreme Court held that a *prima facie* case for habeas corpus relief was stated where a state prisoner alleged that his appointed counsel failed to confer with him until the day of the trial, "refused to do anything for petitioner unless petitioner had some money," and refused to call a witness petitioner had requested him to call.

A decade later, in Michel v. Louisiana, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83 (1955), the Court affirmed a holding that a defendant had not been denied the effective representation of counsel merely because a trial lawyer was elderly and ill. Based on the lawyer's extensive criminal law background and other facts, the court found "no evidence of incompetence" and rejected the contention that a delay in seeking a grand jury indictment, standing alone, was condemning. "The delay might be considered sound trial strategy, particularly since the codefendant could not be found. We cannot infer lack of effective counsel from this circumstance alone." 350 U.S. at 101, 76 S.Ct. at 164. The Supreme Court's conclusion leaves no doubt that evidence of incompetence as such and basic procedural errors should be considered in determining whether a defendant's assistance of counsel has been constitutionally adequate. The Supreme Court made this precedentially clear in Reece v. Georgia,

350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77 (1955), a companion case to Michel v. Louisiana. There the Supreme Court held that "The effective assistance of counsel . . . is a constitutional requirement of due process which no member of the Union may disregard." 350 U.S. at 90, 76 S.Ct. at 171. It determined that Reece was denied this right by not having an attorney in time to object to the racial composition of the grand jury which indicted him. The Court's reasoning leaves no doubt that this right would have been denied if an attorney had been appointed for Reece, but he or she had not objected to the all-white grand jury composition before the grand jury had returned its indictment.

Most recently, in McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L. Ed.2d 763 (1970), the Supreme Court stated that "It has long been recognized that the right to counsel is the right to the effective assistance of counsel." It held that the advice rendered by an attorney as to whether a confession would be admissible in evidence must be "within the range of competence demanded of attorneys in criminal cases." 397 U.S. at 771, 90 S.Ct. at 1449. "[I]f the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel, and . . . judges should strive to maintain proper standards of performance by attorneys who are representing defendants in criminal cases in their courts." 397 U.S. at 771, 90 S.Ct. at 1449.

In view of the Supreme Court's holdings, we must agree with the Courts of Appeals for the Fifth and District of Columbia Circuits, that the "farce and mockery" test should be abandoned as a meaningful standard for testing Sixth Amendment claims. West v. Louisiana, 478 F.2d 1026 (5th Cir. 1973); Bruce v. United States, 126 U.S.App.D.C. 336, 379 F.2d 113 (1967).

The District of Columbia Circuit Court's rejection of this subjective standard is especially significant because it was that Circuit which established it. In Diggs v. Welch, 80 U.S.

App.D.C. 5, 148 F.2d 667 (1945), cert. denied, 325 U.S. 889, 65 S.Ct. 1576, 89 L.Ed. 2002 (1945), the District of Columbia Circuit first concluded that for a petitioner to secure habeas relief "on the sole ground that counsel . . . acted incompetently and negligently during the proceedings," "It must be shown that the proceedings were a farce and a mockery of justice," citing Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543 (1923). The *Diggs* Court based this result on its view that the Sixth Amendment guarantees no more than the formal appointment of competent counsel. Thus, the federal prisoner could ground his petition only on the Fifth Amendment, which guarantees a fair trial. It was to the guarantee of a fair trial, not the Sixth Amendment, that the "farce and mockery" standard was applied.

In subsequent holdings, however, courts held that the "farce and mockery" standard was appropriate for reviewing Sixth Amendment claims. See Mitchell v. United States, 104 U.S.App. D.C. 57, 259 F.2d 787, cert. denied, 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86 (1958); Hester v. United States, 303 F. 2d 47 (10th Cir.), cert. denied, 371 U.S. 847, 83 S.Ct. 80, 9 L.Ed.2d 82 (1962); United States ex rel. Feeley v. Ragen, 166 F.2d 976 (7th Cir. 1948); Williams v. Beto, 354 F.2d 698 (5th Cir. 1965).

In view of Supreme Court rulings subsequent to Diggs v. Welch, which explicitly rejected the *Diggs* Court's premise that the Sixth Amendment guarantees nothing more than the appointment of counsel, the "farce and mockery" standard came under increasing attack from prominent commentators.[9] In 1967 the District of Columbia Circuit Court overruled its *Diggs* holding and rejected the "farce and mockery" standard, in Bruce v. United States, 126 U.S.

App.D.C. 336, 379 F.2d 113 (1967). As it reaffirmed in Scott v. United States, 138 U.S.App.D.C. 339, 427 F.2d 609, 610 (1970):

> The "farce and mockery" standard derives from some older doctrine on the content of the due process clause of the Fifth Amendment. . . .
>
> That standard is no longer valid as such but exists in the law only as a metaphor that the defendant has a heavy burden to show requisite unfairness. . . .
>
> What is involved here is the Sixth Amendment. The Sixth Amendment has overlapping but more stringent standards than the Fifth Amendment as is clear from other contexts. Compare, for example, United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) with Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The appropriate standard for ineffective assistance of counsel, set forth in *Bruce, supra,* is whether gross incompetence blotted out the essence of a substantial defense.

The *Fifth Circuit* came to the same conclusion in West v. Louisiana, 478 F.2d 1026 (5th Cir. 1973), where it rejected Williams v. Beto and reaffirmed its holding in MacKenna v. Ellis, 280 F.2d 592, 599 (5th Cir. 1960):

> We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance. (Emphasis by the Court)

In reviewing this Circuit's treatment of "effective assistance of counsel," we have found numerous assertions of the "farce and mockery" standard, although

9. *See* Beaney, "The Right to Counsel: Past, Present and Future," 49 Va.L.Rev. 1150 (1963); Waltz, "Inadequacy of Trial Defense Representation as a Ground for Post-conviction Relief in Criminal Cases," 59 Nw.U.L.Rev. 289 (1964); Note, "Effective Assistance of Counsel for the Indigent Defendant," 78 Harv.L.Rev. 1434 (1965); Craig, "The Right to Adequate Representation in the Criminal Process: Some Observations." 22 Sw.L.J. 260 (1968).

we have found an equal number of decisions resting on more objective tests.[10] In Norman v. United States, 100 F.2d 905 (6th Cir.), cert. denied, 306 U.S. 660, 59 S.Ct. 790, 83 L.Ed. 1057 (1939), the first case in which this Circuit treated a claim of ineffective assistance of counsel, the Court found no prejudice because of counsel's failure to object to certain evidence. It stated:

> There are state decisions which hold that a new trial in a criminal case should be granted where the negligence of counsel is great or his mistake of law so serious as to deprive the defendant of the benefit of important and material evidence which might reasonably cause the jury to return a different verdict. [citations omitted] They do not reach this case. 100 F.2d at 906.

In Anderson v. Bannan, 250 F.2d 654, 655 (6th Cir. 1958), this Circuit held that "To justify a writ of habeas corpus on the ground of incompetency of counsel, an extreme case must be disclosed, considerably more than inadequacy of representation by counsel of one's own choosing," citing cases from three other circuits. Holding that the state prisoner had not made out a sufficient due process claim and finding no substantial prejudice because of counsel's alleged errors, the Court affirmed the denial of habeas relief.

In O'Malley v. United States, 285 F.2d 733 (6th Cir. 1961), this Circuit first adopted the "farce and mockery" standard, applying it only in those cases where the defendant retained his own counsel.[11] In United States v. Johnston, 318 F.2d 288, 291 (6th Cir. 1963), this Circuit held that the Sixth Amendment guarantees "the adequate assistance of counsel whereby he will have a full, fair trial under the law. In other words, have his 'day in court.'"[12] In Scott v. United States, 334 F.2d 72, 73 (6th Cir. 1964), the Court retreated to a standard of "a farce and a mockery of justice, shocking to the conscience of the Court." The see-saw between a "reasonably effective assistance of counsel" standard and a "farce and mockery" test was straddled in the extensive discussion in Schaber v. Maxwell, 348 F.2d 664 (6th Cir. 1965). The Court cited both the "farce and mockery" standard of *Diggs* and *Mitchell* and the "reasonably likely to render and rendering reasonably effective assistance" standard of *MacKenna*. Concluding that the failure of counsel to file a written plea of "not guilty by reason of insanity," which had given rise to a conclusive presumption under Ohio law that the defendant was sane, had deprived petitioner of due process, the *Schaber* Court granted habeas relief. The case cited as most analogous to Schaber's claim was Poe v. United States, 233 F.Supp. 173 (D.D.C. 1964), where the Court rejected the farce and mockery standard:

> Where the defense is substantially weakened because of the unawareness on the part of defense counsel of a rule of law basic to the case, the accused is not given the effective representation guaranteed him by the Constitution. People v. Ibarra, 60 Cal.2d 460, 34 Cal.Rptr. 863, 386 P.2d 487 (1963) (Traynor, J.) 233 F.Supp. at 178.

---

10. Those citing "farce and mockery" include O'Malley v. United States, 6th Cir., 285 F.2d 733 (1961); Scott v. United States, 6th Cir., 334 F.2d 72 (1964); Hayes v. Russell, 6th Cir., 405 F.2d 859 (1969); Holnagel v. Kropp, 6th Cir., 426 F.2d 777 (1970); and Palfy v. Cardwell, 6th Cir., 448 F.2d 328 (1971).

Those positing an objective test include Norman v. United States, 100 F.2d 905, cert. denied, 306 U.S. 660, 59 S.Ct. 790 (1939); Anderson v. Bannan, 6th Cir., 250 F.2d 654 (1958); United States v. Johnson, 6th Cir., 318 F.2d 288 (1963); Schaber v. Maxwell, 6th Cir., 348 F.2d 664 (1965); and Johns v. Perini, 6th Cir., 440 F.2d 577 (1971).

11. The Court cited *Diggs* and *Mitchell*, along with cases from the Second, Seventh, and Ninth Circuits.

12. The *Johnson* Court held that Appellant had not had a fair opportunity to select counsel of his own choice.

Other recent cases from this Circuit have concluded that "A charge of inadequate legal representation cannot prevail unless what was done or not done by the attorney for his client made the proceedings a farce and a mockery of justice, shocking to the conscience of the Court." Hayes v. Russell, 405 F.2d 859, 860 (6th Cir. 1969). *See also* Holnagel v. Kropp, 426 F.2d 777, 779 (6th Cir. 1970) *cert. denied,* 400 U.S. 867, 91 S.Ct. 108, 27 L.Ed.2d 106 (1970); Palfy v. Cardwell, 448 F.2d 328, 330 (6th Cir. 1971).

In view of the persuasive arguments against reaffirming the "farce and mockery" standard as a meaningful test of the Sixth Amendment right to the effective assistance of counsel, we reject it, except as it may be considered a conclusory description of the objective standard we adopt. Based on our decisions in Schaber v. Maxwell and United States v. Johnson, we rest on a more objective ground suggested in our recent decision in Johns v. Perini, 440 F.2d 577 (6th Cir. 1971). In that case the Court remanded for an evidentiary hearing "to determine whether a negligent omission by defense counsel precluded presentation of evidence of alibi in support of appellant's only defense." 440 F.2d at 579.

■ We hold that the assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. Johns v. Perini, 440 F.2d 577, 579 (6th Cir. 1971); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); King v. Beto, 429 F.2d 221, 225 (5th Cir. 1970), cert. denied, 401 U.S. 936, 91 S.Ct. 921, 28 L.Ed.2d 216 (1971); Chalk v. Beto, 429 F.2d 225, 227 (5th Cir. 1970). Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Defense counsel must investigate all apparently substantial defenses available to the defendant and must assert them in a proper and timely manner. Reece v. Georgia, 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77 (1955); Wilson v. Phend, 417 F.2d 1197 (7th Cir. 1969).

■ It is a denial of the right to the effective assistance of counsel for an attorney to advise his client erroneously on a clear point of law if this advice leads to the deprivation of his client's right to a fair trial. Poe v. United States, 233 F.Supp. 173 (D.D.C.1964); People v. Ibarra, 60 Cal.2d 460, 34 Cal. Rptr. 863, 386 P.2d 487 (1963). Defense strategy and tactics which lawyers of ordinary training and skill in the criminal law would not consider competent deny a criminal defendant the effective assistance of counsel, if some other action would have better protected a defendant and was reasonably foreseeable as such before trial. United States v. Katz, 425 F.2d 928, 930 (2d Cir. 1970). If, however, action that appears erroneous from hindsight was taken for reasons that would appear sound to a competent criminal attorney, the assistance of counsel has not been constitutionally defective. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed. 2d 763 (1970).

■ We hold that Petitioner did not receive the effective assistance of counsel before and during trial. Potentially exonerating defenses were not explored by counsel and were not developed at trial. Because Petitioner was represented by incompetent and ineffective counsel, his conviction cannot stand. Harmless error tests do not apply in regard to the deprivation of a procedural right so fundamental as the effective assistance of counsel. Glasser v. United States, 315 U.S. 60, 76, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Chapman v. California, 386 U.S. 18, 23, 43, 87 S.Ct. 824, 17

L.Ed.2d 705 (Stewart, J., concurring) (1967).

The judgment against Petitioner-Appellant is hereby vacated, and this cause should be and it hereby is remanded to the District Court with direction that the indictment in this case be dismissed unless the Government institutes new proceedings under it within 60 days of this Order.

EDWARDS, Circuit Judge (concurring).

I concur in Judge Celebrezze's remand of this case for new trial. The phrase "farce and a mockery, shocking to the Court" is too subjective a standard to employ as the sole criterion for determining whether or not there has been a Sixth Amendment deprivation of counsel.

The District Judge has entered strong findings of fact concerning the incompetence and ineffectiveness of appellant's trial counsel. These findings do not appear to me to be "clearly erroneous."