[Cite as *State v. Rogers*, 2019-Ohio-4834.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-L-119** |
| FRANK M. ROGERS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2018 CR 000458.

Judgment: Affirmed in part and reversed and vacated in part.

*Charles E. Coulson,* Lake County Prosecutor, and *Jennifer A. McGee,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Edward M. Heindel,* 2200 Terminal Tower, 50 Public Square, Cleveland, OH 44113 (For Defendant-Appellant).


CYNTHIA WESTCOTT RICE, J.

{¶1}   Appellant, Frank M. Rogers, appeals the October 22, 2018, Judgment Entry of the Lake County Court of Common Pleas sentencing him to four years on each of six counts of burglary for a total of 24 years to be run consecutively.  For the reasons discussed herein, the judgment of the Lake County Court of Common Pleas is affirmed in part and reversed and vacated in part.

{¶2} Mr. Rogers was indicted on six counts of burglary that all occurred on October 19, 2017. The case proceeded to trial and the jury ultimately convicted him on all six counts of burglary, felonies of the second degree, in violation of R.C. 2911.12(A)(2). The court sentenced Mr. Rogers to four years in prison on each count, to be run consecutively to one another, and ordered him to pay restitution to each of the victims. Mr. Rogers now appeals and sets forth four assignments of error for our review, which we take out of order.

{¶3} Mr. Rogers' third assignment of error states:

{¶4} The convictions for burglary were not supported by sufficient evidence against Rogers.

{¶5} Specifically, he calls into question whether there was sufficient evidence against him and whether the trial court erred in denying the motion for Crim.R. 29 acquittal at the close of the evidence.

{¶6} A Crim.R. 29 motion "challenges the sufficiency of the evidence introduced by the state to support a conviction." *State v. Figueroa*, 11th Dist. Ashtabula No. 2016-A-0034, 2018-Ohio-1453, ¶32. When reviewing the sufficiency of the evidence, we are required to weigh the evidence in favor of the prosecution. *State v. Jenks,* 61 Ohio St.3d 259, (1991), paragraph two of the syllabus, superseded by constitutional amendment on other grounds in *State v. Smith,* 80 Ohio St.3d 89 (1997). The question is whether "'a reasonable mind [m]ight fairly find each element of the offense beyond a reasonable doubt.'" *State v. Bridgeman*, 55 Ohio St.2d 261, 263 (1978), quoting *United States v. Collon*, 426 F.2d 939, 942 (6th Cir. 1970).

{¶7} Crim.R. 29(A) states in pertinent part, "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of

2

a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." *Id.* "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *Bridgeman, supra,* at syllabus*.*

{¶8} Mr. Rogers was convicted of six counts of burglary, as defined by R.C. 2911.12(A)(2), which states:

{¶9} (A) No person, by force, stealth, or deception, shall do any of the following:

{¶10} * * *

{¶11} (2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]

{¶12} Under this assignment of error, Mr. Rogers specifically asserts the state did not establish that someone was likely to be present in the homes. "The term 'likely to be present' '"connotes something more than a mere possibility, (* * *). A person is likely to be present when a consideration of all the circumstances would seem to justify a logical expectation that a person could be present."'" *State v. Haas*, 11th Dist. Portage No. 2009-P-0068, 2010-Ohio-6249, ¶33, quoting *State v. Mitchell*, 183 Ohio App.3d 254, 2009-Ohio-3393, at ¶18 (6th Dist.). *See also State v. Burkett,* 11th Dist. Portage No. 2009-P-0069, 2010-Ohio-6250, ¶32. "Critically, where the occupants of a house are almost always absent as part of their fixed work schedule, they are not likely

3

to be present during their regular working hours." *State v. Braden*, 1st Dist. Hamilton No. C-170097, 2018-Ohio-563, ¶12.

{¶13} The burden is on the state to show that someone was likely to be present. If the state fails to present any such evidence, the conviction cannot stand. *See State v. Cochran,* 11th Dist. Geauga No. 2006-G-2697, 2007-Ohio-345, ¶48. (Conviction and sentence reversed on one count when the state failed to provide evidence anyone was likely to be present at the time of the offense.).

{¶14} In this case, the state presented evidence in four of the six counts of burglary to show that the homeowners were likely to present.

{¶15} In support of Count 1, Mr. Zenisek testified that he and his wife lived at one of the burglarized homes, and that they were both retired. When the burglary occurred, his wife was at the grocery store and he had left to run a quick errand.

{¶16} In support of Count 2, Mr. Chaffee testified that he and his family lived at one of the burglarized homes. Ms. Chaffee was commonly in and out of the home throughout the day, and at the time of the burglary, she had temporarily left to pick up her children from school.

{¶17} In support of Count 4, Mrs. Hathy testified that she and her husband lived at one of the burglarized homes. She works out of their home, and when she has to be away, her father regularly stops by to care for her dogs.

{¶18} In support of Count 5, Mrs. Reho testified that she and her husband lived at one of the burglarized homes. While they both usually work during the day, she was off on vacation on the day the burglary had occurred but had temporarily left to visit family and go to the grocery store.

4

{¶19} However, the state did not establish that "any person other than the accomplice of the offender is present or likely to be present" in Counts 3 and 6.

{¶20} Regarding Count 3, Miguel Silva-Rangel testified that he lived at one of the burglarized homes with his parents and two brothers. However, his parents left for work and his brothers left for school or the babysitter's house in the early morning. Miguel and his brother returned from school around 2:30 p.m. There was no testimony or evidence presented that this schedule was not their usual routine, nor that on October 19, 2017 it was likely that anyone was going to be home between 6:00 a.m. and 2:30 p.m., when the burglary occurred.

{¶21} Likewise, regarding Count 6, Ms. Wayman testified that she lived at one of the burglarized homes but worked during the day. In fact, on the day in question, she testified she knew it was going to be a long day; she got up at 5:00 a.m. "as [she] always [does]" and left for work around 7:30 a.m. She worked nine hours and went directly to her daughter's house to baby-sit, not returning to her home until around 9:30 p.m. She expressly testified that she did not give anyone permission to be in her home that day. No evidence or testimony was presented to show this was an atypical schedule. Thus, the state failed to establish that anyone was likely to be home at the time the burglary occurred.

{¶22} Accordingly, we find that the state failed to establish that anyone was likely to be present in the homes that are the subject of Counts 3 and 6. As no lesser included offenses were provided in the indictment or the jury instructions, we are constrained to reverse and vacate Mr. Rogers' convictions on Counts 3 and 6. *See State v. Bernard,* 11th Dist. Ashtabula No. 2016-A-0063, 2018-Ohio-351, ¶55 (finding if there was insufficient evidence to support the trial court's denial of appellant's motion for

5

acquittal, the convictions must be vacated). *See also Blockburger v. United States*, 284 U.S. 299, (1932); *State v. Zima*, 102 Ohio St.3d 61, 2004-Ohio-1807, ¶41 ("*Blockburger* applies to bar successive prosecutions for greater and lesser included offenses whatever the order of trials.").

{¶23} Mr. Rogers' third assignment of error has merit solely as it relates to Counts 3 and 6; with regard to Counts 1, 2, 4, and 5, his third assignment of error has no merit.

{¶24} Mr. Rogers' second assignment of error states:

{¶25} The convictions for burglary were against the manifest weight of the evidence.

{¶26} When a court reviews the manifest weight of the evidence, it must observe the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of the witnesses. *State v. Sprecker*, 11th Dist. Lake No. 2016-L-098, 2017-Ohio-7291, ¶44, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In resolving conflicts in the evidence and deciding witness credibility, the court determines whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Thompkins, supra,* citing *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). "'The discretionary power to grant a new trial should only be exercised in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins, supra,* citing *Martin, supra,* at 720-721. "The role of the reviewing court is to engage in a limited weighing of the evidence in determining whether the state properly carried its burden of persuasion. * * * If the evidence is susceptible to more than one interpretation, an appellate court must

6

interpret it in a manner consistent with the verdict." (Citations omitted.) *Sprecker, supra*, at ¶46.

{¶27} Specifically, Mr. Rogers asserts that the jury lost its way in determining that he had committed any of the burglaries. As discussed under his third assignment of error, we agree as it pertains to Counts 3 and 6; however, for the following reasons, we are not convinced the jury lost its way as it pertains to Counts 1, 2, 4, and 5.

{¶28} Based on the description of the vehicle seen by a victim's neighbors and surveillance footage from a nearby business, Medina police initiated a traffic stop of a 2004 pewter GMC Yukon thought to be the vehicle used in these burglaries. Ms. Bednarski and Mr. Rogers were passengers in the vehicle, which was owned and driven by Mr. Blackburn. Police also discovered in the vehicle several items linked to the burglarized homes in Lake County, including a distinct Mario Kart blanket, a custom-made drawer from one of the victim's closet, and several used video games that police were ultimately able to trace back to one of the victims using GameStop receipts.

{¶29} Mr. Blackburn, Mr. Rogers' co-defendant, is also charged with six counts of burglary. As part of a plea agreement, however, Mr. Blackburn agreed to testify against Mr. Rogers in exchange for the prosecution recommending only four years imprisonment to be run concurrently with the time he is presently serving. At trial, Mr. Blackburn testified that he and Mr. Rogers burglarized numerous homes in Lake County on October 19, 2017. According to Mr. Blackburn, he drove Mr. Rogers to the locations, and at each house, Mr. Rogers would exit the vehicle, break into the house by blunt force or return to the car to obtain tools to break in, and then five or ten minutes later would return to the vehicle with a pillowcase, blanket, or container of items from the house. The state presented evidence that Mr. Blackburn had severely limited mobility

7

due to injuries sustained in a motorcycle accident. Mr. Blackburn testified that he did not enter the houses himself because he walked too slowly, and it caused him pain to navigate stairs.

{¶30} Additionally, Ms. Bednarski, who was not charged in relation to the Lake County burglaries, testified that Mr. Rogers and Mr. Blackburn took some of the stolen items to her house. She testified that Mr. Rogers bragged about how he and Mr. Blackburn had committed seven burglaries in one day and showed her some of the items they had taken. She was able to recall several stolen items, including specific pieces of jewelry, bowling balls, and the Mario Kart blanket.

{¶31} Furthermore, the state presented evidence that Mr. Blackburn and Mr. Rogers' cell phone records indicate that they were near four of the homes around the times the homes were burglarized. While Mr. Rogers presented evidence that others have used his cell phone in the past, he did not assert that was the case on October 19, 2017, and offered no alternative location for his whereabouts that day.

{¶32} In light of all the evidence, we cannot say that the jury lost its way in convicting Mr. Rogers' on Counts 1, 2, 4, and 5. Thus, Mr. Rogers' second assignment of error has merit solely as it relates to Counts 3 and 6; with regard to Counts 1, 2, 4, and 5, his second assignment of error has no merit.

{¶33} Mr. Rogers' first assignment of error states:

{¶34} Rogers was denied his right to the effective assistance of counsel in violation of the Sixth amendment and Article I, Section 10 of the Ohio Constitution.

{¶35} To establish ineffective assistance of counsel, the defendant "must show (1) deficient performance by counsel, that is, performance falling below an objective standard of reasonable representation, and (2) prejudice-a reasonable probability that,

8

but for counsel's errors, the result would have been different." *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, ¶183, citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

{¶36} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, *supra,* at 689. *See also State v. Rice*, 11th Dist. Lake No. 2018-L-065, 2019-Ohio-1415, ¶88. Furthermore, """"because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance. (* * *)." * * * Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. [Thus,] [t]o warrant reversal, 'the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." * * *'"" (Citations omitted.) *Id.* at ¶89.

{¶37} Mr. Rogers argues three ways in which he believes his trial counsel was ineffective. First, he asserts they failed to adequately cross-examine and impeach witnesses.

{¶38} Both during trial and sentencing, Mr. Rogers made diffuse speeches objecting to his counsel's performance. He repeatedly asked his counsel to "bring up issues regarding [the] cross-examination of Michael Blackburn" and prior statements about which houses were burglarized in order to show that Mr. "Blackburn was placing him at the scene in order to obtain the benefit of a light sentence." He asserts there is

9

an audio recording of Mr. Blackburn misidentifying one of the burglarized homes. We are not persuaded that the presentation of this evidence would have changed the ultimate outcome of the case. Mr. Blackburn testified that he was able to specifically identify four of the houses they burglarized, as well as details of the surrounding areas. This was corroborated by Sgt. Radovanic with the Lake County sheriff's department, who testified that Mr. Blackburn was able to identify at least some of the burglarized homes.

{¶39} Additionally, Mr. Rogers also asserts his counsel should have shown that Mr. Blackburn was selling items from the burglaries to impeach Mr. Blackburn's testimony. These text messages however, were actually discussed by the prosecution on direct examination and by his defense counsel on cross-examination of Sgt. Radovanic. Specifically, Sgt. Radovanic testified that he discovered text message communications between Mr. Blackburn and Glenn Filmore, who Mr. Blackburn identified as his drug dealer, that discussed selling an Xbox and related equipment.

{¶40} Even if viewing Mr. Rogers' arguments as true, we are not persuaded his counsel was ineffective. It is well established that "[t]he scope of cross-examination falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶101. *See also State v. Smith,* 89 Ohio St.3d 323, (2000). (Finding even questionable trial strategy does not compel a finding of ineffective assistance of counsel. "In these situations, we normally defer to counsel's judgment."). Thus, Mr. Rogers' assertion that his counsel was ineffective for failing to impeach Mr. Blackburn by use of these text messages is without merit.

{¶41} Second, Mr. Rogers asserts his counsel was ineffective for failing to raise the issue of Rogers' competency to stand trial.

{¶42} "'[A] person [who] lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.'" *Smith, supra,* at 329, quoting *Drope v. Missouri*, 420 U.S. 162, 171 (1975). Mr. Rogers argues that he was unable to assist in preparing his defense because he had such ineffective assistance of counsel. Capacity, however, does not require *that* a defendant assist in preparing his defense, but that he *has the capacity* to do so. Mr. Rogers points to his "rambling, and somewhat incoherent speeches" as showing he had "mental difficulties." His speeches, however, rather tend to show he understood the nature of the proceedings. He makes arguments about witnesses' testimony and their purported motivations, about events that occurred in the days surrounding the burglaries in Lake County, and about how long he will be incarcerated. During sentencing, he asks whether this sentence is to run concurrently with the sentences from Medina and Cuyahoga counties. Mr. Rogers has not presented sufficient evidence to show he lacked the mental capacity to stand trial and his assertion that his trial counsel was ineffective for failing to ask for a competency hearing is without merit.

{¶43} Finally, Mr. Rogers also faults his trial counsel for failing to move to dismiss at the close of the state's case, but instead moved at the close of the defense case. He fails to show, however, that had his counsel made a Crim.R. 29 motion at the close of the state's evidence there was a reasonable likelihood the result would have been different than when counsel made the motion later that same day. In fact, when counsel renewed the motion at the close of all evidence, the court considered all the

11

evidence, including the state's evidence, and denied the motion. While counsel could have moved for dismissal sooner, not doing so did not deprive Mr. Rogers of any opportunity he would otherwise have been afforded.

{¶44} Mr. Rogers' first assignment of error is without merit.

{¶45} Mr. Rogers' fourth and final assignment of error states:

{¶46} The trial court erred in awarding restitution where there was no actual proof of the amounts owed.

{¶47} Specifically, Mr. Rogers asserts the trial court cannot order restitution without a showing of actual economic loss. However, R.C. 2929.18(A)(1) provides, in pertinent part:

{¶48} Restitution by the offender to the victim of the offender's crime * * * in an amount based on the victim's economic loss. * * * If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount.

{¶49} In accordance with R.C. 2929.18, the court based the amount of restitution on information provided by the victims in a presentence investigation report. The report contained an itemized list of lost items and their monetary value for each victim, as well as various insurance documents and receipts, all of which support the amount the court ordered Mr. Rogers to repay. Mr. Rogers also asserts the court erred by failing to hold a hearing to determine the amount of restitution. However, as stated in R.C. 2929.18, a hearing is only required *if* there is a dispute as to the amount. Here, no dispute as to

the amount was raised at sentencing. Thus, the court did not err by not holding a hearing.

{¶50} Furthermore, failure to object to the imposition of restitution waives the issue on appeal except for a review for plain error. *State v. Whitman*, 11th Dist. Lake No. 2011-L-131, 2012-Ohio-3025, ¶21. Thus, to the extent Mr. Rogers specifically disputes the amount owed to the Hathys on appeal, we review only for plain error. "A claimed error is plain error only if it is obvious, and 'but for the error, the outcome of the trial clearly would have been otherwise.'" *Id.*, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph two of the syllabus. The Hathys submitted an itemized insurance report detailing the items that were stolen from their house. It was Ms. Hathy's business to sell jewelry, so she had a substantial amount of jewelry at home that was stolen. The reported the value of her stolen property, according to insurance records, was $134,301.99. She received $7,198.54 from insurance, and the court ordered Mr. Rogers to repay the remaining unpaid loss of $127,103.45. We discern no plain error.

{¶51} Mr. Rogers' fourth assignment of error is without merit.

{¶52} For the reasons set forth herein, Mr. Rogers' conviction and sentence on Counts 3 and 6 are reversed and vacated. The amount of restitution Mr. Rogers was ordered to pay as to Count 3 ($1,440.00) and as to Count 6 ($770.20) is also reversed. Otherwise, the judgment of the Lake County Court of Common pleas is affirmed.


THOMAS R. WRIGHT, P.J.,

MATT LYNCH, J.,

concur.

13