IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 2, 2005

## ANTHONY LEON MOORE v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Madison County**
**No. C-03-35     Donald H. Allen, Judge**

_____

**No. W2004-02039-CCA-R3-PC  - Filed September 12, 2005**

_____

The petitioner, Anthony Leon Moore, appeals from the post-conviction court's denial of post-conviction relief. On appeal, he contends that the post-conviction court erred in finding that he received the effective assistance of counsel. Following our review, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. McLIN, J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ. joined.

J. Colin Morris, Jackson, Tennessee, for the appellant, Anthony Leon Moore.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; James G. Woodall, District Attorney General; and Alfred Lynn Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

A Madison County jury convicted the petitioner of aggravated robbery, a Class B felony, and aggravated burglary, a Class C felony. The trial court sentenced him as a Range II, multiple offender to consecutive sentences of fifteen years for the aggravated robbery conviction and ten years for the aggravated burglary conviction in the Tennessee Department of Correction. His convictions and sentences were affirmed on direct appeal. See State v. Anthony Leon Moore, No. W2000-02862-CCA-R3-CD, 2002 WL 1482667 (Tenn. Crim. App., at Jackson, Feb. 11, 2002) *perm. app. denied* (Tenn. July 8, 2002). The petitioner moved for post-conviction relief alleging the ineffective assistance of counsel at trial. More specifically, he alleged that trial counsel was ineffective for failing to adequately investigate his case and prepare for trial.

### FACTS PRESENTED TO THE JURY

The following facts are taken from this Court's opinion on the direct appeal of the petitioner's convictions:

This case relates to the robbery of Larry Felts. The victim testified that he was an art broker and that on November 4, 1999, he was in Madison County on a business trip. He said that he was staying in a first-floor room at the Comfort Inn in Jackson and that about 9:30 p.m., he was talking on the telephone to a client. He said that he was smoking a cigarette and that he opened the room's sliding glass door to let in fresh air. He said that suddenly, the glass door slammed open. He said that the defendant ran into his room and put a black handgun, with clear tape on its handle, to his head.

The victim testified that he put the telephone down and told the defendant to take his money and leave. He said that the defendant told him repeatedly that the defendant was going to kill him. He said that the defendant picked up the telephone and that the client, who was still on the line, told the defendant that the client was going to call the police. He said that the defendant told the client, "I don't give a damn. I don't care if you call the f* * *ing police because this is--I'm going to kill this mother f* * *er." He said that the defendant stayed on the telephone with the client for about ten minutes. He said that one time, the defendant dropped the gun and then challenged the victim to try to get it. He said that otherwise, the defendant kept the gun pointed at the victim's head during the robbery.

The victim testified that after the defendant hung up the telephone, the defendant went through the victim's wallet, briefcase, and suitcase. He said that the defendant took one hundred twenty dollars, a pack of cigarettes, and a red cigarette lighter. He said that the defendant used the telephone to call someone to come and get the defendant. He said that the defendant smoked a couple of cigarettes and that the defendant stayed in his hotel room for thirty to forty-five minutes. The victim said that he was not physically injured but that the defendant kissed him on his right cheek before the defendant left the room. He said that as soon as the defendant left the room, he shut the sliding glass door, locked it, and called the police.

The victim testified that the defendant was wearing a Dallas Cowboys jacket and a stocking over his hair. He said that he could see the defendant's face clearly. He said that the day after the robbery, Investigator Jeff Austin showed him a photograph array and that he identified the robber's picture.

Terri Wallace testified that she knew the defendant and that he used to stay at her house occasionally. She acknowledged that about November 5, 1999, Investigators Austin and Golden came to her home and asked if they could search it. Ms. Wallace gave them permission to search, and the investigators took a Dallas Cowboys jacket that belonged to the defendant and a pellet gun from the house. At the time of the search, the defendant was not at Ms. Wallace's house, and she had not seen him for a couple of days. She said that her child had found the pellet gun outside and that it

did not belong to anyone.

Investigator Jeff Austin of the Jackson Police Department testified that at 11:10 p.m. on November 4, 1999, he got a telephone call at his home. He said that in response to the call, he went to the Comfort Inn and that other officers were already present. He said that he took the victim to the police department and that the victim gave a formal statement. He said that after the victim gave a statement, he gave the victim a chance to calm down and took the victim back to the Comfort Inn. He said that the victim got a different room and spent the night at the hotel. He said that when he returned to work the next morning, Crime Stoppers had gotten a tip that the defendant robbed the victim. He said that based on the tip, he put together a photograph array, took the array to the Comfort Inn, and showed the array to the victim. He said that the victim identified the defendant as the robber.

Investigator Austin testified that he got a warrant to arrest the defendant. He said that while he was obtaining the warrant, Crime Stoppers got another tip that the defendant could be found at Terri Wallace's house. He said he and Investigator Rodney Golden went to Ms. Wallace's residence and asked her if they could search her home for any clothing or weapons that the defendant used in the robbery. He said that Ms. Wallace gave them permission to search and that they found a Dallas Cowboys jacket with a red lighter in one of the pockets. He said that they also found a Marksman BB gun upstairs in a chest of drawers. He said that the lighter and the gun were tested for fingerprints but that no usable prints were obtained. He said that the victim's hotel room was also tested for fingerprints but that no usable prints were found on the room's telephone or sliding glass door.

The prosecution showed Investigator Austin an evidence bag containing a Marksman BB gun, and he identified it as the gun that was found in Ms. Wallace's residence. When the prosecution asked Investigator Austin if the gun was secured in order that it could not be fired, he answered that it did not have a trigger housing in it. On cross-examination, Investigator Austin testified that when he and Investigator Golden found the gun, the gun's top slide would fall off and that the gun had clear tape on its slide and body.

Sergeant Jim Collum of the Jackson Police Department testified that on November 7, 1999, the police department received information that the defendant was at an apartment complex. He said that he went to the complex and found the defendant hiding in some shrubbery. He said that he arrested the defendant and escorted him to a police car. He said that without being asked any questions, the defendant stated, "I didn't do all these by myself" and "How many have ya'll charged me with?"

The defendant testified that about 9:00 or 9:30 p.m. on November 4, 1999, he was buying a pack of cigarettes at a store. He said that when he left the store, the victim

confronted him and asked him about restaurants or nightclubs where the victim could get a drink. He said that he offered to show the victim some nightclubs and that the two of them walked in the direction of the clubs. He said that he asked the victim if the victim wanted to smoke marijuana and that the victim said yes. He said that he and the victim smoked a marijuana cigarette and then went back to the victim's hotel room to have a drink. He said that they drank whiskey and smoked another marijuana cigarette. The defendant testified that he left the hotel to buy a can of beer at a nearby gas station.

The defendant testified that when he returned to the victim's hotel room, the sliding glass door was open and that he walked into the room. He said that the victim was on the telephone. He said that the victim hung up the telephone and asked the defendant if the defendant could get more marijuana. The defendant said that he told the victim that he could get more marijuana for eighty dollars. He said that the victim gave him the money and that he left the victim's room. He said that he kept the eighty dollars and did not get the drugs for the victim.

The defendant denied having a gun on November 4, taking the victim's red lighter, or making any statements to Sergeant Collum. He acknowledged that the Dallas Cowboys jacket that the police found at Ms. Wallace's home belonged to him. On cross-examination, he said that he owned the red lighter. The defendant said that after Sergeant Collum arrested him, Sergeant Collum read him his rights and that he elected to remain silent and did not say anything to Sergeant Collum. He said that Sergeant Collum and the victim were lying. He said that the victim was mad at him for taking the victim's money. He acknowledged being convicted in 1993 for theft of property valued over one thousand dollars.

The victim was called as a rebuttal witness and testified that he had never seen the defendant before the robbery. He denied going to clubs with the defendant or having a drink with him. He said that the defendant took one hundred twenty dollars, a pack of cigarettes, and a red lighter from him. Sergeant Collum was called as a rebuttal witness and testified that he never *Mirandized* the defendant. He said that investigators, not patrol officers, *Mirandized* suspects.

The jury found the defendant guilty of aggravated robbery and aggravated burglary. It assessed fines of fifteen thousand dollars and five thousand dollars respectively.

Moore, 2002 WL 1482667 at *1-3.

## PROOF AT THE HEARING

At the post-conviction relief hearing, trial counsel testified that she represented the petitioner at trial. She testified that she was appointed to represent the petitioner on his arraignment date of

February 18, 2000. Counsel testified that she obtained a discovery packet and plea offer from the prosecutor which she hand-delivered and conveyed to the petitioner. Further, she testified that the petitioner refused to accept any offer that did not include probation. Counsel testified that she prepared and filed motions on petitioner's behalf including a Motion for Bond Reduction, which was denied by the trial court. Counsel testified that she explained to the petitioner that aggravated robbery was not a probatable offense. She testified that she interviewed witnesses on the face of the indictment as that was her practice and had her cases investigated. Counsel testified that the petitioner was not happy with her representation and that petitioner was looking for post-conviction issues. She stated that the petitioner wrote letters to the judge, the Board of Professional Responsibility and to her boss concerning his dislike of her representation. She testified that the petitioner refused to accept her professional judgment and this continued throughout the trial. Counsel testified that regardless of how the petitioner felt about her, that she fully prepared for the case and acted in a professional manner. Counsel further testified that she did not object as often as petitioner would have liked at trial because she did not want to alienate the jury by "over objecting."

The petitioner testified that he withheld information from his trial counsel because he felt uncomfortable with her. Petitioner challenged the extent of trial counsel's investigation and was of the opinion that more witnesses should have been interviewed and called upon to testify on his behalf. However, petitioner failed to name any additional witnesses needing to be interviewed and the substance of their testimony.

## POST-CONVICTION COURT'S FINDINGS

The post-conviction court filed exemplary written findings of fact and conclusions of law. It accredited the testimony of trial counsel and found the petitioner's trial counsel did adequately prepare, investigate, and represent petitioner at trial. It further found that the evidence was sufficient to support the convictions for both aggravated robbery and aggravated burglary and that petitioner failed to prove any violations of his constitutional rights. The court found that many of the grounds and issues alleged in the petitioner's petition had been previously determined or waived and that petitioner simply failed to produce sufficient proof to support his allegations of ineffective assistance of counsel.

## STANDARD OF REVIEW

To succeed on a post-conviction claim, the petitioner must prove the allegations set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, this Court is required to affirm the post-conviction court's findings unless the petitioner proves that the evidence preponderates against those findings. State v. Burns, 6 S.W.3rd 453, 461 (Tenn. 1999). Those findings of fact are afforded the weight of a jury verdict, and this Court is bound by the findings unless the evidence in the record preponderates against those findings. Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This court may not re-weigh or re-evaluate the evidence, nor substitute its inferences for those drawn by

the post-conviction court. State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

## INEFFECTIVE ASSISTANCE OF COUNSEL

In order to prove ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance was deficient, and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings were fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687 (1984). In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court established that the services rendered should be within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197 (D.C. Cir. 1973).

In Beasley, the court stated:

[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations. . . . Defense counsel must investigate all apparently substantial defenses available to the defendant and must assert them in a proper and timely manner.

491 F.2d at 696 (citations omitted). In DeCoster, the court stated:

*In General*--Counsel should be guided by the American Bar Association Standards for the Defense Function. They represent the legal profession's own articulation of guidelines for the defense of criminal cases.

*Specifically*--(1) Counsel should confer with his client without delay and as often as necessary to elicit matters of defense, or to ascertain that potential defenses are unavailable. Counsel should discuss fully potential strategies and tactical choices with his client.

(2) Counsel should promptly advise his client of his rights and take all actions necessary to preserve them. . . . Counsel should also be concerned with the accused's right to be released from custody pending trial, and be prepared, where appropriate,

to make motions for a pre-trial psychiatric examination or for the suppression of evidence.

(3) Counsel must conduct appropriate investigations, both factual and legal, to determine what matters of defense can be developed. The Supreme Court has noted that the adversary system requires that "all available defenses are raised" so that the government is put to its proof. This means that in most cases a defense attorney, or his agent, should interview not only his own witnesses but also those that the government intends to call, when they are accessible. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. And, of course, the duty to investigate also requires adequate legal research.

487 F.2d at 1203-04.

In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; *see* Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002). Accordingly, the fact that a particular strategy or tactic hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made for sound trial strategy if the choices are informed and based upon adequate preparation. *See* Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996).

## ANALYSIS

Upon review, we conclude that the record supports the post-conviction court's findings. The petitioner's claim that his trial counsel was ineffective is contradicted by trial counsel's testimony and some of the petitioner's own admissions at the post-conviction hearing. Counsel's testimony, accredited by the post-conviction court, indicated that she promptly filed discovery motions, shared and reviewed all available discovery with the petitioner, conveyed all plea offers to the petitioner, contacted the petitioner a number of times prior to trial, investigated the case, interviewed potential defense witnesses, attempted to locate the State's witnesses, and made informed strategic decisions regarding the petitioner's case. Further, it is interesting to note that petitioner testified that he did not reveal all the facts of his case to trial counsel prior to trial nor did petitioner present witnesses in support of his defense at the post-conviction hearing. "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). "As a general rule this is the only way the petitioner can establish that (a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case, (b) a known witness was not interviewed, (c) the failure to discover or interview a witness inured to his prejudice, or (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." Id. Neither the post-conviction court nor this Court can speculate on what a witness' testimony might have been if introduced by trial counsel. Therefore, the petitioner failed

-7-

to establish that he was prejudiced.  Accordingly, it is clear from the record that the evidence at the post-conviction hearing does not preponderate against the post-conviction court's findings and  the petitioner is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the post-conviction court.


_____
J.C. McLIN, JUDGE