IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 19, 2008

## MARK ARMSTRONG v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Rutherford County**
**No. F-58801     James K. Clayton, Jr., Judge**

---

**No. M2007-01614-CCA-R3-PC - Filed June 25, 2008**

---

The petitioner, who is serving a twenty-year sentence for aggravated rape, filed the present post-conviction action alleging he did not receive the effective assistance of counsel at trial. The trial court conducted a hearing and denied his claim, and he appealed. Upon review, we hold that the trial court did not err in denying relief, and we affirm its judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILILAMS, JJ., joined.

Gerald L. Melton, District Public Defender, for the appellant, Mark Armstrong.

Robert E. Cooper, Jr., Attorney General and Reporter; Elizabeth B. Marney, Senior Counsel; William C. Whitesell, Jr., District Attorney General; and Laural A. Nutt, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The petitioner was convicted by a Rutherford County Circuit Court jury of aggravated rape of a thirteen-year-old girl who lived in his neighborhood. At trial, the state relied on the victim's testimony and physical evidence, including DNA evidence. The petitioner elected not to testify at trial, although there was evidence of his pretrial statement, in which he claimed to have been on the telephone during the time the victim said the offense occurred. See State v. Mark S. Armstrong, No. M2004-02432-CCA-R3-CD, Rutherford County (Tenn. Crim. App. May 11, 2005), app. denied (Tenn. Dec. 19, 2005).

The petitioner testified at the post-conviction hearing that his trial attorneys failed to obtain independent DNA testing of the bedding. He said the state's test revealed a match to his DNA from the bedding but was inconclusive with respect to the victim's DNA. He said the test should have been performed because it would have either confirmed or denied the state's allegations against him. The defendant admitted that he had consensual sexual relations with the victim but stated he "didn't

do nothing . . . aggravated or anything of that nature." He said the victim had lied about the circumstances of the offense. The petitioner testified that counsel failed to introduce evidence of the victim's background and failed to cross-examine the victim about her character, although he did not provide specific information in his testimony about this claim. He said that he met with counsel about twenty times before trial and that counsel went over the charges with him and the state's burden to prove the charges. He said that they also discussed "[t]o some extent" whether the petitioner would testify and his reservations about testifying because his family would find out that he had engaged in sexual activity with the victim. He said counsel advised him of the state's settlement offer for him to plead guilty to the lesser offense of rape and receive a sentence of ten years. The petitioner acknowledged a document bearing his signature which stated that he had discussed with his attorneys his right to testify at trial and had decided not to testify and had refused to allow his attorneys to pursue a defense which would allow the jury to find him guilty of statutory rape. He stated that he did not read the document at the time he signed it and that he was advised that he could not testify that he did not have sexual relations with the victim.

One of the petitioner's two trial attorneys testified that he met with the petitioner numerous times before trial and that he discussed the nature of the charge, the possible sentence, and the facts of the case with the petitioner. He said the petitioner would not allow him in plea bargaining to reveal to the prosecutor that the petitioner and the victim had consensual sex. He said that he told the petitioner that he had a possible defense which might result in conviction on a lesser charge based upon the consensual nature of the defendant's actions but that the petitioner did not want his family to know he had engaged in sexual activity with the victim. He said he told the petitioner that in light of the petitioner's wishes about not pursuing a defense based on consent, his ability to present a successful defense on the petitioner's behalf was limited. He said that he was apprehensive about going to trial but that the petitioner did not want to accept the ten-year plea offer because the petitioner did not want his wife to find out about the sexual activity. He said that he advised the petitioner he could enter a best interest plea but that the petitioner still was not interested. He said that he and co-counsel extensively discussed with the petitioner "every aspect of how the trial was going to progress," given the petitioner's insistence that he would not plead guilty or allow counsel to present a consent defense. He said that he and co-counsel did not pursue independent DNA testing because he thought the inconclusive DNA result allowed the inference that the unidentified DNA belonged to a member of the defendant's family, rather than the victim. He said he discussed with the petitioner the advantage of the inconclusive result. He said that in his investigation, he "got a lot of stories" about the victim but was unable to verify the information. He said that he attempted to contact "several people" but that he was unable to speak with some of them because their parents would not give permission for their children to speak with him.

To the extent that the evidence conflicted, the trial court accredited the testimony of trial counsel over that of the petitioner. The court found that the petitioner's attorneys were limited by the petitioner in the type of defense they were able to stage but that they "did as good a job as they possibly could have under the circumstances." The court found that the petitioner understood the risk he was taking in deciding not to testify and pursue a consent defense and that he did so knowingly and voluntarily.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690, 104 S. Ct. at 2066. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 104 S. Ct. at 2068. Failure to satisfy either prong results in the denial of relief. Id. at 697, 104 S. Ct. at 2069.

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982); see DeCoster, 487 F.2d at 1201.

The petitioner has raised several specific allegations of counsel's shortcomings on appeal. They are: failure to obtain an independent DNA test after receiving the results of the state's test, failure to investigate the victim's background and character adequately, failure to advise him adequately of all of the facts which were necessary for the petitioner to make informed decisions, and counsel's trial decisions were influenced negatively by the petitioner's admission to counsel of having engaged in sexual activity with the victim.

With respect to each of these allegations, the record reflects that trial counsel offered an explanation of his and co-counsel's actions and that the trial court accredited the testimony of trial counsel in denying the petition. Trial counsel testified that he thought the inconclusive DNA test result was to the defense's advantage because it did not exclude the possibility that the unknown contributor was a member of the petitioner's family, rather than the victim. Counsel said he discussed this with the petitioner before trial. He said he investigated the victim's background and character but was unable to corroborate rumors he heard about the victim and was unable to speak with some juvenile witnesses because their parents would not consent. Both counsel and the petitioner testified that they met numerous times, and counsel testified about having covered many areas with the petitioner. Counsel testified that he and co-counsel spent more time and effort than usual with the petitioner on preparing the defense because of the petitioner's desire that his conduct with the victim not be exposed to his family. Counsel's testimony demonstrates that he and co-counsel did everything they could to accommodate the petitioner's desire regarding the course of the defense while still performing as zealous advocates for the petitioner. We hold that the trial court properly determined that the petitioner failed to establish that counsels' performance was deficient or that he was prejudiced by counsels' performance. The trial court properly denied post-conviction relief.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE

-4-