IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Jackson June 3, 2008

## MICHAEL LEE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Williamson County**
**No. CR11767      Timothy L. Easter, Judge**

_____

**No. M2007-01665-CCA-R3-PC - Filed September 29, 2008**

_____

The petitioner, Michael Lee, appeals the denial of his petition for post-conviction relief by the Circuit Court for Williamson County from his convictions for aggravated burglary and theft of property valued over $1000 for which he was sentenced to fifteen years and twelve years, respectively, to be served consecutively for a total of twenty-seven years. The petitioner claims the trial court erred in concluding he was provided the effective assistance of counsel. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Mark M. Mizell, Franklin, Tennessee, for the appellant, Michael Lee.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Mary Katharine White, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The petitioner was convicted in a bench trial. In the opinion affirming the convictions, this court stated the following facts:

> Deputy Michael J. Terns of the Williamson County Sheriff's Department testified that on August 14, 2002, he was an officer with the Spring Hill Police Department, and at about 12:00 p.m. that day, he stopped a blue Cadillac for expired license tags and improper registration. The defendant, who was driving, told Deputy Terns that

he did not have a driver's license and gave Terns a false name. Upon conducting a search, Deputy Terns found a wallet under the driver's seat containing what appeared to be a Department of Safety receipt with the defendant's name on it. The defendant then admitted that his name was Michael Lee. Deputy Terns found a ladies' silver-colored watch and a men's watch on the defendant's person, a sock full of rings underneath the dashboard, a pipe used for smoking cocaine under the driver's seat, and a black purse containing a sock filled with silver coins inside the vehicle. A search of the trunk revealed a television, a TV/VCR combination, and a microwave. The defendant said that the ladies' watch found in his pocket belonged to his girlfriend. Cotton said that the vehicle belonged to him, but there was no title or registration in the vehicle, and a check of the vehicle identification number did not reflect Cotton or the defendant as the owner.

Detective David Beard of the Williamson County Sheriff's Department testified that he interviewed the defendant who admitted that he was with Cotton on the day of the burglary. The defendant said that he thought the victims' home was the home of Cotton's mother. The defendant also told Beard that the ladies' watch found in his pocket belonged to his girlfriend. However, [the owners] identified the property recovered from the defendant and Cotton as theirs, including the ladies' watch.

Elvis Cotton, the defendant's cousin and a codefendant, testified that he and the defendant were riding together on August 14, 2002, after "getting high on crack" cocaine. They stopped at the [owners'] residence to ask for some gas for their vehicle, but, after determining that no one was home and that the back door was open, they went inside and took various items of property which they intended to sell or trade for drugs. Cotton said he never told the defendant that he was going to his mother's house and that the defendant knew where his mother lived. However, when he and the defendant were stopped, the defendant overheard him tell the officer that the television and jewelry belonged to his mother. Cotton said he pled guilty to aggravated burglary and theft over $1000 on November 12, 2002.

State v. Michael Renee Lee, No. M2003-01077-CCA-R3-CD, Williamson County, slip. op. at 2 (Tenn. Crim. App. Jan. 9, 2004), app. denied (Tenn. May 10, 2004).

-2-

The trial court held a hearing, and both the petitioner and his former counsel testified. The petitioner argued his trial counsel was ineffective in three areas: (1) the petitioner was coerced into signing a written waiver of his right to jury trial; (2) trial counsel failed to investigate and interview a potentially exculpatory witness before trial; and (3) trial counsel failed to present evidence showing the petitioner did not have the requisite mens rea to commit the crimes for which he was convicted.

At the hearing, the petitioner claimed the entire case against him could have been avoided, had his attorney interviewed the petitioner's girlfriend, Gwen Santiago. He testified she was the owner of the woman's watch that the petitioner had in his pocket when he was arrested. The petitioner said he thought that the house he was convicted of burglarizing was the house of the co-defendant's mother, that the co-defendant had her permission to enter the house, and that she had given her son the items to take. The petitioner claimed that he received bad advice and that because of this bad advice, he signed a waiver of jury trial. He said he was assured he would receive a maximum sentence of fifteen years.

On cross-examination, the petitioner admitted he had a man's and a woman's watch when he was arrested, both having been reported as stolen and later identified by the owners. The petitioner refused to admit his criminal record, but he acknowledged his record meant he was a career offender. The petitioner stated he met and corresponded by letter with his attorney several times before trial. The petitioner admitted that in one of these letters, his attorney explained to him why his co-defendant was sentenced as a Range I offender. He admitted that he did not mention to his attorney in his letters either the possibility that Ms. Santiago was a potential exculpatory witness or that the woman's watch belonged to Ms. Santiago. He stated his main request in these letters was that his attorney get him into drug court.

The petitioner's trial counsel testified that the petitioner was interested in the drug court program. Counsel stated that although she had met with the petitioner at his arraignment and twice thereafter to share discovery and prepare for trial, the petitioner told her about the girlfriend for the first time on February 17, 2003–two days before the petitioner's trial. Counsel testified that the petitioner told her the girlfriend's name, but that he did not know how to contact her. Counsel said that the petitioner then told her to contact his sister to get Ms. Santiago's telephone number and that he gave counsel the sister's telephone number. Counsel testified that she called and that the telephone number was out of service. Counsel said she looked online for the girlfriend's address on the day before trial. She testified she found a possible address, but no telephone number.

Counsel testified that she and the petitioner discussed the contradictory statements the petitioner's co-defendant had given to the police. Counsel stated she and the petitioner talked about the petitioner's criminal history and how he would be impeached if he testified. She said they also discussed the disadvantages of a jury trial, given his extensive record. She stated she brought a waiver of jury form for the petitioner to sign after they had discussed the right to a jury trial. She said that the petitioner was not coerced to sign the waiver and that the petitioner neither protested nor indicated any feeling of coercion at the time he signed it.

-3-

Counsel testified that she and the petitioner discussed a plea deal offered by the state involving twelve- and fifteen-year concurrent sentences as a Range III offender instead of a career offender. Counsel said she had created a document listing the elements of each offense and the potential sentences in each range for the petitioner. She stated she and the petitioner had discussed consecutive and concurrent sentencing. Counsel testified she never indicated the maximum sentence possible was fifteen years.

Counsel testified that she and the petitioner discussed the difficulties of bringing in the petitioner's theories of the case. First, the petitioner wanted to present proof that the watch was his girlfriend's, but he did not provide any contact information for her. Second, the petitioner wanted to show what he understood from his co-defendant about the house belonging to his mother and he and the petitioner having permission both to go there and to remove items that his mother had given the co-defendant. However, the petitioner opted not to testify at trial. Counsel testified that, in spite of these difficulties, she was able to present the petitioner's defense claims.

The trial court found the petitioner did not prove facts to support his claims by clear and convincing evidence. See T.C.A. § 40-30-110(f). The court found the attorney's testimony to be more credible than that of the petitioner.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690, 104 S. Ct. at 2066. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 104 S. Ct. at 2068. Failure to satisfy either prong results in the denial of relief. Id. at 697, 104 S. Ct. at 2069.

In <u>Baxter v. Rose</u>, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in <u>Beasley v. United States</u>, 491 F.2d 687, 696 (6th Cir. 1974), and <u>United States v. DeCoster</u>, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689, 104 S. Ct. at 2065. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." <u>Cooper v. State</u>, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. <u>Hellard v. State</u>, 629 S.W.2d 4, 9 (Tenn. 1982); <u>see</u> <u>DeCoster</u>, 487 F.2d at 1201.

First, the petitioner claims he was coerced into signing a written waiver of his right to jury trial. The trial court found that the evidence did not support the petitioner's waiver claim and that he had knowingly and voluntarily waived his right to trial by jury. The evidence shows that the petitioner signed a written waiver of his right to trial by jury after consulting with his attorney on the risks of a jury hearing about his extensive criminal record. There is no evidence of coercion. There is no evidence of deficient performance. The record reflects that the petitioner's attorney was prepared and had a waiver form with her during the consultation. We conclude the evidence does not preponderate against the trial court's finding of a voluntary waiver.

Second, the petitioner claims trial counsel failed to investigate and interview a potentially exculpatory witness before trial. The trial court found counsel's actions were within the range of competent assistance, in both trying to contact a witness disclosed to her two days before trial using the paltry information her client gave her and moving for a continuance to obtain time in which to try to contact and investigate this witness. On direct appeal, this court held that the trial court acted within its discretion in denying the motion for a continuance. The trial court also found that counsel advocated the petitioner's claims about Ms. Santiago at trial, despite not having her testimony. The petitioner admitted that any potential testimony he sought from Ms. Santiago was brought into evidence during his attorney's cross-examination of the state's witnesses. Regarding not having Ms. Santiago's live testimony at trial, the petitioner testified that he was not prejudiced.

Additionally, to substantiate a claim regarding failure to call a witness, a petitioner must present the witness's testimony at the post-conviction hearing. Only if a petitioner can "produce a material witness who (a) could have been found by a reasonable investigation and (b) would have testified favorably in support of [petitioner's] defense if called" can counsel's failure to investigate and interview a potentially exculpatory witness before trial be shown. <u>Black v. State</u>, 794 S.W.2d 752, 758 (Tenn. Crim. App. 1990). Here, the petitioner did not meet his burden because Ms. Santiago did not testify at this hearing. The evidence does not preponderate against the trial court's finding of no deficient representation.

-5-

Third, the petitioner claims trial counsel failed to present evidence showing the petitioner did not have the requisite *mens rea* to commit the crimes for which he was convicted. Petitioner claimed his counsel did not present evidence that the petitioner and the co-defendant had permission to remove the items from the house and that the watch he had when he was arrested belonged to his girlfriend. The trial court found that the petitioner's attorney raised these theories at trial, even without the testimony of the petitioner or Ms. Santiago. The petitioner admitted that all of his theories were presented on cross-examination. Trial counsel's testimony corroborated this. The evidence does not preponderate against the trial court's finding.

The post-conviction relief petition alleging ineffective assistance of counsel was properly dismissed. Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE