IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

DECEMBER 1998 SESSION

FILED

March 3, 1999

Cecil W. Crowson
Appellate Court Clerk

BILLY JOE GREENWOOD,   )
                      )
        Appellant,    )    No. 01C01-9803-CR-00134
                      )
                      )    Overton County
v.                    )
                      )    Honorable Leon Burns, Jr., Judge
                      )
DAVID NEWBERRY, Warden,   )    (Post-Conviction)
and STATE OF TENNESSEE,   )
                      )
        Appellees.   )

| For the Appellant: | For the Appellee: |
|---|---|
| Lynda Simmons<br>107 East Court Square<br>Livingston, TN 38570<br>(AT TRIAL) | John Knox Walkup<br>Attorney General of Tennessee<br>    and<br>Kim R. Helper<br>Assistant Attorney General of Tennessee<br>425 Fifth Avenue North |
| John B. Nisbet, III<br>101 S. Jefferson Avenue<br>Cookeville, TN 38501<br>(ON APPEAL) | Nashville, TN 37243-0493<br><br>William Edward Gibson<br>District Attorney General<br>145 S. Jefferson Avenue<br>Cookeville, TN 38501-3424<br>    and<br>Owen G. Burnett<br>Assistant District Attorney General<br>Overton County Annex<br>P.O. Box 706<br>Livingston, TN 38570 |

OPINION FILED:_____

AFFIRMED IN PART; DELAYED APPEAL GRANTED WITH JUDGMENT IN CASE
NO. 01C01-9108-CC-00228 VACATED AND REINSTATED

Joseph M. Tipton
Judge

**O P I N I O N**

The petitioner, Billy Joe Greenwood, appeals as of right from the Overton County Criminal Court's denial of his petition for post-conviction relief. He seeks relief from his 1990 convictions for first degree murder and first degree burglary and from his effective sentence of life plus six years imprisonment. This court affirmed the convictions but modified the sentences to run concurrently. State v. Billy Joe Greenwood, No. 01C01-9108-CC-00228, Overton County (Tenn. Crim. App. Mar. 3, 1992). The petitioner contends that he received the ineffective assistance of counsel at trial and on direct appeal because counsel (1) untimely filed the motion for a new trial and (2) failed to file an application for permission to appeal to the supreme court. He also contends that the trial court gave an unconstitutional jury instruction regarding premeditation being formed in an instant. We affirm the post-conviction court's dismissal of the petition with respect to the untimely motion for a new trial and the jury instruction, but we hold that the petitioner is entitled to a delayed appeal.

At the post-conviction hearing, the petitioner testified that at trial and on direct appeal, he was represented by two appointed attorneys. The petitioner said that before trial, he requested that his attorneys seek a change of venue because both he and the victim's family were well known within the county and because his case had generated a lot of publicity. The petitioner stated that his attorneys told him that this would not matter.

The petitioner stated that although a mental evaluation suggested that he needed mental treatment while he was incarcerated and awaiting trial, his attorneys never sought such help for him. The petitioner said this rendered him somewhat unable to assist in his own defense.

2

The petitioner testified that his attorneys filed the motion for a new trial nineteen days late. The petitioner's post-conviction attorney noted that although the court of criminal appeals reviewed the petitioner's case, they limited their review to those errors that would result in dismissal rather than a new trial.

The petitioner testified that he also felt his attorneys were ineffective because they did not seek to appeal his case to the supreme court. He said that he received a letter from his lead attorney stating that the attorneys were finished with his case, but it did not tell him how to proceed. The petitioner testified that he had a tenth grade education and an I.Q. of 78. He said that he did not understand what he should do after his appeal to this court ended, and by the time an "inmate attorney" advised him on how to proceed, it was too late to appeal to the supreme court.

One of the petitioner's trial attorneys testified that he was appointed to assist the petitioner's lead attorney after the state gave notice that it would seek the death penalty. The attorney stated that he met with the petitioner at the jail and at the courthouse a number of times and that his investigator also met with the petitioner. The attorney said that he did not remember discussing a change of venue with the petitioner. He stated that he discussed the possibility of a venue change with the petitioner's lead attorney but that they apparently decided they did not have a sufficient basis to request a change in venue. He said that they were able to pick a jury and that nothing about the jury's selection indicated to him that a motion for a change of venue would succeed.

The attorney stated that Middle Tennessee Health Center had evaluated the petitioner and found him competent and sane. The attorney admitted that he would have known the petitioner's IQ during the time he was preparing for trial. The attorney said that in order to insure that the petitioner understood their discussions, he spoke

3

carefully to the petitioner. He said that he knew that a mental expert had recommended that the petitioner receive mental treatment while incarcerated but that it is practically impossible to arrange for such treatment. The attorney stated that the petitioner was cooperative and pleasant and that he felt like his discussions with the petitioner were productive. The attorney said that he and the petitioner's lead attorney were able to get the state to withdraw the death penalty notice.

The attorney testified that the motion for a new trial was nineteen days late. He explained that he and the lead attorney were waiting for the state to correct an error in the original judgment. He said that the state was to file the corrected judgment and then to certify a copy to the petitioner's trial attorneys. He stated that they were waiting on the corrected judgment before they filed the motion for a new trial. He said that instead, the original judgment was filed without notice to them. He testified that by the time the corrected judgment and the motion were filed, the motion was untimely in relation to the original judgment. The attorney testified that he did not recall what was wrong with the original judgment.

On cross examination, the attorney testified that a mental health expert evaluated the petitioner before trial and found that the petitioner was not able to premeditate or deliberate at the time the murder occurred due to his mental state. The attorney stated that nothing occurred between the time he received the expert's evaluation and the trial that would indicate to him that the petitioner needed further mental evaluation. The attorney said that the petitioner's condition seemed to improve gradually as the trial approached.

The attorney testified that all of the jury instructions given at the trial were the standard, form jury instructions. He said that neither the petitioner's attorneys nor the state requested that any special instructions be given.

4

The attorney testified that he and the lead attorney discussed the proper procedures in deciding whether they should pursue an appeal to the supreme court. He said that they concluded that no suitable issues for review by the supreme court existed. He testified that it was his understanding that the lead attorney then sent the appropriate correspondence to the petitioner notifying him that they were not going to take the case to the supreme court. On redirect examination, the attorney admitted that he and the lead counsel had the same duty toward their client and that he would also be responsible if the lead attorney had not adequately informed the petitioner of how to appeal to the supreme court.

The trial court found that the petitioner failed to prove that he had received the ineffective assistance of counsel. It found that the petitioner's attorneys considered a change of venue but felt that they did not have grounds to request one. The trial court also noted that a jury was selected and that the petitioner had shown no indication that the jury was biased. While the trial court did express concern over the untimely motion for a new trial, it found that the error did not rise to the level of ineffective assistance of counsel because this court did review the record. The trial court also found that the jury instructions given were the standard, pattern jury instructions and that the petitioner failed to present any evidence of error in them.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner contends that he received the ineffective assistance of counsel. Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is upon the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838,

5

842-44 (1993).  The Strickland standard has been applied, as well, to the right to counsel under Article I, Section 9 of the Tennessee Constitution.  State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn.), cert. denied, 493 U.S. 874 (1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court stated that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases.  Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974) and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973).  Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Strickland v. Washington, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982) (counsel's conduct will not be measured by "20-20 hindsight").  Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance.  Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation.  See Hellard, 629 S.W.2d at 9; DeCoster, 487 F.2d at 1201.

Also, we note that the approach to the issue of the ineffective assistance of counsel does not have to start with an analysis of an attorney's conduct.  If prejudice is not shown, we need not seek to determine the validity of the allegations about deficient performance.  Strickland v. Washington, 466 U.S. at 697, 104 S. Ct. at 2069.

6

## A. MOTION FOR NEW TRIAL

The petitioner contends that his attorneys' performance was deficient because they filed the motion for a new trial too late.  He claims that he was prejudiced by their deficiency because his motion for a new trial was declared a nullity by this court, and this court's review on direct appeal was limited to "apparent errors which would result in dismissal rather than a new trial."  See State v. Billy Joe Greenwood, No. 01C01-9108-CC-00228, Overton County, slip op. at 4 (Tenn. Crim. App. Mar. 3, 1992).  Although the petitioner acknowledges that this court also reviewed the jury selection issue for plain error, he argues that his attorneys' deficiency foreclosed the possibility of a new trial based on the petitioner's jury selection issue.  We hold that although counsel's performance was deficient, the petitioner has not proven prejudice.

We believe that in filing the motion for a new trial too late, the petitioner's attorneys' performance fell below the range of competence required of criminal counsel.  In order for the petitioner to prevail on an ineffective assistance of counsel claim, though, the petitioner must still show the secondary prong of prejudice.  The trial court found that the petitioner had not been prejudiced because this court was still able to review his case.  On direct appeal, this court noted, "We have reviewed the defendant's jury selection issue for plain error; we find none."  Billy Joe Greenwood, No. 01C01-9108-CC-00228, slip op. at 4.  Thus, even though the motion for new trial was deemed a nullity, petitioner's jury selection claim was not precluded from review.  Although the petitioner argues this review was limited, a review for plain error does not necessarily render the proceedings fundamentally unfair.  In any event, the trial court found that the petitioner's trial attorneys were able to select a jury and that the petitioner had presented no evidence indicating that the jury was biased against him.  The record does not preponderate otherwise.

7

## B. DELAYED APPEAL

The petitioner also contends that he received the ineffective assistance of counsel because his attorneys did not pursue an application for permission to appeal to the supreme court under Rule 11, T.R.A.P., nor did they move to withdraw from further representation pursuant to Supreme Court Rule 14. The state concedes that the attorneys failed to give the proper notice of withdrawal pursuant to Rule 14 and that the petitioner should be granted a delayed appeal. We agree.

"[U]nilateral termination of a direct appeal following first-tier review entitles a prospective appellant to relief in the form of a delayed appeal." Pinkston v. State, 668 S.W.2d 676, 677 (Tenn. Crim. App. 1984). In this case, the petitioner's trial attorney testified that he and the petitioner's lead attorney determined that no suitable issues for review by the supreme court existed. The attorney stated that he believed that the lead attorney then sent a letter to the petitioner notifying him that they were not going to take the case to the supreme court. The petitioner testified that he received a letter from the lead attorney stating that his attorneys were finished with his case, but it did not advise him on how to proceed. Nothing in the record indicates that the petitioner's attorneys moved to withdraw from representation at the conclusion of the direct appeal.

Supreme Court Rule 14 sets forth the minimum requirements necessary to protect a defendant's due process rights. State v. Brown, 653 S.W.2d 765, 767 (Tenn. Crim. App. 1983). Inherent in Rule 14 is our supreme court's determination that the responsibility falls upon the attorney of record to preserve a defendant's right to seek further review. Because the petitioner's attorneys failed to comply with Rule 14, we believe the petitioner is entitled to seek a delayed appeal.

## II. JURY INSTRUCTION

The petitioner also contends that under State v. Brown, 836 S.W.2d 530 (Tenn. 1992), the trial court gave an unconstitutional jury instruction on premeditation because it instructed the jury that premeditation could be formed in an instant. In Brown, our supreme court held that trial courts should not instruct a jury that premeditation can be formed in an instant because of the risk of confusing premeditation with deliberation, which cannot be formed in an instant. Id. at 543. The court did not hold that this type of instruction violated a constitutional right. See Lofton v. State, 898 S.W.2d 246, 249-50 (Tenn. Crim. App. 1994). Post-conviction relief is available only when the conviction or sentence is void or voidable due to the abridgment of a constitutional right. Because the petitioner's allegations regarding the jury instruction on premeditation do not raise a constitutional violation, he is not entitled to post-conviction relief. See Harris v. State, 947 S.W.2d 156, 174 (Tenn. Crim. App. 1996).

In consideration of the foregoing, we affirm the denial of post-conviction relief as to the allegations that counsel was ineffective for failing to file the motion for a new trial timely and that the jury instruction on premeditation was unconstitutional. We vacate our judgment in State v. Billy Joe Greenwood, No. 01C01-9108-CC-00228, Overton County (Tenn. Crim. App. Mar. 3, 1992), and reinstate it as of the date of the filing of this opinion.

_____
Joseph M. Tipton, Judge

9

CONCUR:

_____
John H. Peay, Judge


_____
Norma McGee Ogle, Judge