817 F.2d 757
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ollie E. LeFLORE, Defendant-Appellant.
 No. 85-1010.
 United States Court of Appeals, Sixth Circuit.
 May 7, 1987.
 
 Before MERRITT and NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Ollie E. LeFlore appeals from his convictions under 18 U.S.C. Sec.Sec. 751 and 4082(d) for escaping from the custody of the Attorney General. Defendant principally asserts that his indictment-should have been dismissed because of violations of the Interstate Agreement on Detainers Act and that his convictions should be set aside because his trial counsel was ineffective. For the reasons which follow, we remand this case for further proceedings in connection with the ineffectiveness claim.
 
 I.
 
 2
 Defendant LeFlore was committed to the custody of the United States Attorney General on January 2, 1974, pursuant to a conviction not before this court. He was transferred from a federal prison to Project Rehab Community Treatment Center (a contract halfway house) on February 3, 1983. On April 11, 1983, LeFlore did not return to the halfway house as scheduled, and an arrest warrant for his escape from the custody of the Attorney General was issued on April 19, 1983. On January 13, 1984, LeFlore was apprehended by Detroit, Michigan police officers and was placed in state custody pending trial on state charges.[1] He went to trial on the state charges and was acquitted on May 10, 1984. It is evident that from the time of his arrest until his acquittal defendant LeFlore was not a state prisoner but was merely a state pre-trial detainee.
 
 
 3
 Between the time LeFlore was arrested by state authorities and acquitted on the state charges, he was transferred back and forth between state and federal jurisdictions. Pursuant to a writ of habeas corpus ad prosequendum, defendant was first taken into federal custody on February 9, 1984,[2] but he did not have his first appearance on the escape charges until February 17, 1984. He returned to federal district court on February 21, 1984, for a bond hearing, and on March 2, 1984, for a preliminary examination. A grand jury indictment was issued on March 20, 1984. He was represented by court appointed counsel, Allan Long, from the time of his first appearance through the remainder of the trial proceedings. Between the time he was taken into federal custody and the time the indictment was issued, he remained in federal custody. However, he was transferred back to state custody on March 28, 1984.
 
 
 4
 Defendant asserts that on April 11, 1984, a detainer with respect to his escape charge was issued by the federal government, and on April 20, 1984, he was once again transferred from state custody to federal custody pursuant to a federal writ of habeas corpus ad prosequendum for an arraignment and the taking of his plea on the escape charge. He remained in federal custody from April 20 to May 3, 1984, at which time he was transferred back to state custody for trial.
 
 
 5
 Following his acquittal on the state charges, defendant was held by the state authorities pursuant to the federal detainer, and was transferred back to federal custody on May 18, 1984.
 
 
 6
 Prior to commencement of trial, but on the same day of trial, counsel for defendant filed a motion to dismiss the indictment pursuant to the Interstate Agreement on Detainers Act, 18 U.S.C. App., and defendant requested the court to appoint a substitute counsel asserting that his counsel was ineffective. The court denied both the motion and the request.
 
 
 7
 At trial, several witnesses from the Community Treatment Center testified that LeFlore had not returned as scheduled, and never made contact with any federal authorities to turn himself in. LeFlore testified in his own behalf. His defense, inter alia, was that on the date of his escape, someone shot at him and that the man he was with, Richard Ferguson, was hit by the gunfire. As a result, he was afraid of returning to the halfway house for fear that someone there was involved in the shooting. As time passed, he was afraid that he would be punished for something that he had not instigated. On cross-examination, the following colloquy took place between the federal prosecuting attorney and defendant:
 
 
 8
 Q You knew that Richard Ferguson had said that it was you who shot him isn't that true?
 
 
 9
 A Beg pardon.
 
 
 10
 Q Didn't you know that Richard Ferguson alleged that you had shot him?
 
 
 11
 A Yes, he lied.
 
 
 12
 Q Isn't that the reason that you did not return to the center?
 
 
 13
 A My reason is just what I stated.
 
 
 14
 Q You did not want to punished for being involved with Richard Ferguson who you shouldn't have been involved with and for getting involved in a shooting that you shouldn't have been involved with, isn't that true?
 
 
 15
 A No, it isn't.
 
 
 16
 Defendant's counsel did not elicit rebuttal testimony subsequent to this exchange regarding defendant's acquittal on state charges resulting from the shooting.
 
 
 17
 Defendant was convicted by a jury on both counts. He was sentenced to a total of three-years imprisonment on November 8, 1984, to be served consecutive to existing sentences.
 
 
 18
 A timely appeal was filed, and appellate counsel was appointed on October 16, 1985. Briefs were filed by both defendant, pro se, and defendant's counsel.
 
 II.
 A.
 
 19
 Defendant first asserts that his indictment should have been dismissed pursuant to the Interstate Agreement on Detainers Act.
 
 
 20
 The Interstate Agreement on Detainers Act (Agreement), 18 U.S.C. App., sets forth procedures for obtaining prisoners held in another jurisdiction, as well as sanctions for failing to abide by those procedures. The Agreement has two primary purposes: to facilitate the expeditious disposition of pending charges against prisoners, and to minimize the interference with treatment and rehabilitation of persons serving sentences. See United States v. Mauro, 436 U.S. 340, 343 (1978); United States v. Roberts, 548 F.2d 665, 669 (6th Cir.), cert. denied, 431 U.S. 931 (1977).
 
 
 21
 Defendant asserts that once the federal government had custody of him following the issuance of the detainer, the government was required to bring him to trial before returning him to the state of Michigan pursuant to Article IV of the Agreement; since that did not occur, he argues that the indictment should have been dismissed. However, even though a detainer is filed by the federal government against an individual, that factor alone does not trigger the Interstate Agreement on Detainers Act; rather, the defendant must be incarcerated in the "sending" state (the state in which the defendant is being held). Since defendant was only a pre-trial detainee in Michigan, the "sending" state, the Agreement was not rendered applicable. See United States v. Dixon, 592 F.2d 329, 333 (6th Cir.) ("the provisions of the Agreement are applicable only when a participating jurisdiction, having untried charges pending against , a prisoner, first lodges a detainer with the participating jurisdiction where the prisoner is incarcerated"), cert. denied, 441 U.S. 951 (1979); Roberts, 548 F.2d at 671 (Agreement's provisions do not "apply to persons being detained for trial who are not serving prison sentences").[3]
 
 B.
 
 22
 The defendant also asserts that his convictions should be set aside due to the ineffectiveness of trial counsel. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for establishing a denial of effective assistance of counsel under the Sixth Amendment:
 
 
 23
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
 
 
 24
 Id. at 687. Accordingly, a defendant is required to show that his counsel's performance was deficient, and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. See also Watson v. Marshall, 784 F.2d 722, 725 (6th Cir. 1985), cert. denies, 106 S. Ct. 1955 (1986). A claim of ineffective assistance of counsel is made if defense counsel "deprive [s] a criminal defendant of a substantial defense by his own ineffectiveness or incompetence." Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974).
 
 
 25
 Defendant asserts that his trial counsel was ineffective for failing to seek dismissal of the indictment pursuant to the speedy trial limitations set forth in 18 U.S.C. Sec.3161(b), and for failing to put forth rebuttal evidence regarding the April 11, 1983 shooting incident.[4]
 
 
 26
 While we believe that defendant has failed to establish that his counsel's performance was deficient or prejudicial in other respects,[5] we are persuaded that his speedy trial argument may have merit. Section 3161 (b) provides in pertinent part: "Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." This time limit can be extended in accordance with section 3161(h). If an indictment is not timely filed, the "charge against that individual contained in such complaint shall be dismissed or otherwise dropped." 18 U.S.C. Sec. 3162(a)(1).
 
 
 27
 In the instant case, there is evidence that defendant was taken into federal custody on this escape charge on February 9, 1984, had his first appearance on February 17, 1984, and was indicted on March 20, 1984. If the speedy trial limitations set forth in section 3161(b) began to run on February 9, or February 17, and was not tolled, it is evident that the indictment was not filed in a timely manner. Further, if the indictment was not timely filed and counsel failed to seek to have the complaint dismissed, we believe defendant states a viable Sixth Amendment claim. However, because of various conflicts in the record, it is not clear when defendant was "arrested or served with a summons in connection with such charges" within the meaning of section 3161(b), nor has the record been developed to establish possible extensions of time pursuant to section 3161 (h) . The record is simply too sketchy for this court to make a determination of ineffectiveness of counsel on appeal.
 
 
 28
 Accordingly, we REMAND this case to the district court for a development of the record and a determination on this particular ineffectiveness claim. We have reviewed the remainder of defendant's claims and find them to be without merit.
 
 
 
 [1]
 The state charges arose out of a shooting incident occurring on April 11, 1983, the date of LeFlore's escape from federal custody
 
 
 [2]
 There is a conflict in the record as to whether he was taken into custody on the escape charge, or whether he was taken into custody on other unrelated charges which were subsequently dismissed
 
 
 [3]
 Accordingly, even if defendant was "incarcerated" within the meaning of the Agreement while in the federal prison, that does not change the result in this case. The Agreement only applies when the "receiving" state (the state requesting to bring a prisoner to trial) files a detainer and that individual is incarcerated in the "sending" state. Since he was never incarcerated in Michigan, the Agreement was not applicable. Further, defendant's claim that he was not accorded pre-transfer hearings in violation of the Uniform Criminal Extradition Act is to no avail, since the federal government has not adopted that Act
 
 
 [4]
 The government argues that we cannot reach the speedy trial claim because defendant failed to raise speedy trial objections at trial. This argument ignores the fact that defendant is not raising speedy trial violations per se, but is challenging the ffectiveness of his trial counsel based upon counsel's failure to recognize the importance of that issue. The effectiveness of his trial counsel can be raised on appeal, particularly since defendant informed the district court of his concerns over counsel's performance
 
 
 [5]
 In particular, we note that appellant has failed to meet his burden of showing prejudice with respect to his trial counsel's failure to call certain witnesses. Appellant has not only failed to explain what the content of the testimony would have been, but he has also failed to show that the result of the proceeding would have been different had this testimony been elicited