# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs February 14, 2012

## OPHELIA L. LOMAX v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Lauderdale County**
**No. 8203     Joe H. Walker, III, Judge**

**No. W2011-01567-CCA-R3-PC  - Filed August 23, 2012**

The Petitioner, Ophelia L. Lomax, appeals the Lauderdale County Circuit Court's denial of post-conviction relief from her convictions for aggravated child abuse by causing serious bodily injury and aggravated child abuse by neglect or endangering a child.  On appeal, she contends that trial counsel rendered ineffective assistance by failing to (1) meet with her or discuss with her the nature of the charges and her potential defenses, (2) call an expert witness at the trial to contest the issue of serious bodily injury, and (3) raise an issue of prosecutorial misconduct on appeal.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

George D. Norton, Jr., Ripley, Tennessee, for the appellant, Ophelia L. Lomax.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; Mike Dunavant, District Attorney General; and Julie K. Pillow, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Petitioner's aggravated child abuse convictions arose from a school nurse's discovering signs of physical abuse and malnutrition on the eleven-year-old victim, the Petitioner's step-daughter.  In the appeal of her conviction, this court stated the facts as follows:

The evidence established that [the victim] suffered severe trauma from her head to the bottom of her feet. She had second degree burns on her foot as well as multiple old and new bruises and abrasions. Both parents admitted to using a belt to whip [the victim]. [The victim] testified that both Mr. and Mrs. Lomax whipped her on Saturday and Sunday and Mrs. Lomax whipped her on Monday. [The victim] also testified that Mrs. Lomax burned her with a straightening iron three times on Sunday. [The victim] was in pain when she was burned and whipped and at trial she said that her foot still hurt her and caused her to limp. The testimony of [the emergency room nurse who examined the victim] established that [the victim] was at fifty percent of the national standard for height against weight and that [the victim] was underweight, dehydrated, and malnourished. [The nurse] testified that there was a substantial risk of death as a result of [the victim's] condition as a whole.

State v. Jason Scott Lomax and Ophelia Lomax, No. W2008-01615-CCA-R3-CD, slip op. at 13 (Tenn. Crim. App. Oct. 21, 2009), perm. app. denied (Tenn. Apr. 23, 2010).

At the post-conviction hearing, the Petitioner testified that trial counsel did not show her the indictment, review it with her, or tell her the punishment she faced if convicted. She said that she received a copy of the indictment at her arraignment and that the first contact she had with counsel was at a preliminary hearing. She said that counsel met with her only once during the preliminary proceedings and that the meeting lasted about thirty minutes. Counsel did not discuss potential defenses or prepare her for the preliminary hearing, but she told him that she wanted her mother and brother to be called as witnesses at the preliminary hearing. She said that counsel only met with her once more to prepare for the trial, that the meeting occurred about two weeks before the trial and lasted thirty minutes, and that he read her a "forensics interview." She said counsel discussed her charges but did not "go in depth" and just "skimmed the top."

The Petitioner testified that she and her mother attempted to contact trial counsel several times but that he was "always out of his office." She said the only discovery materials she received were a police dispatch report and a forensics interview. She asked counsel to interview her mother and brother as potential trial witnesses and assumed that counsel would subpoena other witnesses listed on her indictment, including the doctor who examined the victim. Counsel did not meet with the doctor or present him as a witness at the trial. She agreed that her mother, brother, and other witnesses testified at the trial. She said

that counsel did not discuss expert witnesses with her or present an expert at the trial and that counsel did not present a witness to discuss whether the victim suffered serious bodily injury.

The Petitioner testified that trial counsel did not discuss or investigate potential defenses and that she did not know what her defenses would be at the trial. She told counsel she was not present when the victim was injured and to speak with her mother regarding her alibi, but counsel did not talk to anyone or investigate her alibi. She said that she was with her mother when the victim was injured and that her mother testified to that fact at the trial. She said that counsel urged her to accept a ten-year plea offer and that she did not think counsel was prepared for the trial. She said counsel "slept" through the trial and did not object or do anything when the prosecutor "inflamed" the jury by crying and "performing like a sophomore drama student" in front of the jury. She was positive that counsel did not object when the prosecutor cried. She said counsel did not review with her the motions that he filed on her behalf.

The Petitioner testified that she filed a bar complaint against trial counsel after the trial because counsel did not perform his duties adequately and because he did not think there were issues other than sufficiency of the evidence that could be raised on appeal. She said that counsel did not want to file anything but that he filed a motion for a new trial and an appeal because it was his duty. She said that counsel was offended by her bar complaint and that he proceeded with her appeal "half-heartedly." She said counsel gave her a copy of her appellate brief.

On cross-examination, the Petitioner testified that she met with counsel only once before the trial, other than at her court dates, and that counsel would be lying if he said he met with her six or seven times before the trial. She said counsel communicated with her "some" while she was incarcerated. She agreed that counsel gave her a copy of the discovery materials. She said that she reviewed photographs at the preliminary hearing and that she received a copy of the victim's forensics interview before the trial. She agreed that she received a copy of the indictment and that counsel told her what she was charged with but said she did not know what the charges "consisted of." She agreed counsel wrote her a letter in which he told her of a plea negotiation and the punishment she faced if convicted at a trial. She agreed that she turned down a ten-year plea offer and that she was sentenced to eight years' confinement after the trial.

The Petitioner testified that she told trial counsel she knew "nothing" about the offense of which she was accused. She said she did not know she was accused of burning the victim until she heard the State's opening argument at her trial and that she did not see photographs of the flat iron she was accused of burning the victim with until the trial. She agreed counsel cross-examined the victim and the nurses who examined the victim shortly

after the victim was injured. She said that counsel failed to call Dr. Beasley, the doctor who performed a follow-up examination of the victim, and that Dr. Beasley would have provided exculpatory evidence at the trial. She agreed that Dr. Beasley did not treat the victim at the time of the injuries. She said that although she thought Dr. Beasley examined the victim in March, about a month after the injuries, he was a doctor, not a nurse, and he believed the victim's injuries were accidental.

The Petitioner testified that although she stated at the trial that she was not present when the victim's injuries were caused and that she did not injure the victim, she did not consider it to be a defense. She agreed that the defense presented was that she did not injure the victim and that the defense was presented at her request. She agreed that she told trial counsel she wished to have her brother and mother testify and that he called them as witnesses at the trial. She agreed she was not continuously in the presence of her mother and brother during the weekend the victim was injured. She agreed there were times during the weekend when she was home alone with the victim.

The Petitioner agreed that trial counsel objected during the prosecutor's opening statements, which involved "inflammatory conduct." She agreed counsel gave her a copy of her appellate brief and the trial transcript as they prepared her appeal. She agreed counsel reviewed the brief with her. She said she asked counsel to raise the additional issues of prosecutorial misconduct and the fact that the victim and other witnesses committed perjury.

On redirect examination, the Petitioner testified that she did not think her only defense at the trial would be that she did not know what happened to the victim. She said that trial counsel did not tell her of any other defenses and that he did not prepare her to testify or inform her of the consequences of testifying. She agreed that the prosecutor cried in front of the jury numerous times throughout the trial and that counsel did not object to the crying, move for a mistrial, or raise the issue on appeal.

Trial counsel testified that he met with the Petitioner five or six times to prepare her case and that during these meetings he went over the indictment, gave the Petitioner all discovery materials he received, went over medical information and the seriousness of the victim's injuries, and told the Petitioner what he expected the victim to say at the trial. He said he was sure he went over all the discovery with the Petitioner in detail. He said that he did not file any motions and that he did not think there were any pertinent motions that could have been filed. He said the only physical evidence introduced at the trial that he had not seen before the trial was the iron used to burn the victim. He objected to admission of the iron.

Trial counsel testified that the prosecutor did not cry throughout the trial but that he objected when she cried during opening statements. His objection was overruled. He also moved for a mistrial, but that motion was overruled. He did not raise the prosecutor's actions on appeal because he had seen prosecutors cry numerous times during his career and he did not think it was an issue. He stated that the only realistic issue on appeal was sufficiency of the evidence and that he discussed the appeal with the Petitioner. He was aware that the Petitioner filed a bar complaint against him before filing the appeal. He filed a motion with this court asking for direction on how he should proceed and was instructed to proceed with the Petitioner's appeal.

Trial counsel testified that he did not interview Dr. Beasley. He did not think he learned of Dr. Beasley's "follow-up care" of the victim until the trial was over. He said he would have "shied away" from having the doctor testify because it would have given the prosecutor an additional opportunity to highlight the victim's injuries, which were the most serious injuries he had seen in a criminal trial. He said that even if Dr. Beasley had told him the victim's injuries were accidental, he probably would not have called Dr. Beasley because he wanted to "steer" the testimony at the trial away from the victim's injuries. He had a doctor review the victim's medical records before the trial, and the doctor told him that the victim suffered serious bodily injuries that were not accidental. He said he was very cautious during the trial to ensure that the victim's injuries were not highlighted to the jury more than necessary. He said that he spoke with all of the witnesses listed on the indictment and that he did not recall Dr. Beasley being listed. He said the Petitioner's mother provided the most useful information.

Trial counsel testified that the Petitioner's defense at the trial was that she did not commit the offense. He thought this was her only defense. He said that the Petitioner was not adamant about going to trial but that the State would not waiver on their ten-year plea offer.

On cross-examination, trial counsel agreed that the victim's injuries were discovered on Monday morning at the victim's school and that only the Petitioner and Mr. Lomax could account for what happened from the end of Saturday until the injuries were discovered. He agreed the Petitioner was not very helpful in forming a defense because she continually stated that she did not know what happened to the victim. He said that the only viable defense was to show the Petitioner did not injure the victim and that the Petitioner's brother and mother were helpful in forming a defense. He said he told the Petitioner that the outcome of the trial depended on her and the victim's credibility. He said he did not want to call additional medical witnesses to testify about the victim's injuries because the State could have "ripped [them] up" on cross-examination and made matters worse. He said the victim had injuries all over her body and agreed the doctor he consulted before the trial did not think the injuries

were accidental. He said he kept the Petitioner informed about his investigation of the victim's injuries.

Trial counsel testified that he met with counsel for the co-defendant four or five times and that they discussed trial strategy. He agreed that both he and counsel for the co-defendant cross-examined the victim at the trial and that they presented a unified defense. He agreed there was a preliminary hearing and said he provided the Petitioner with the photographs and information introduced at the hearing. He said he had a detailed discussion with the Petitioner before the trial about the evidence that could be used against her. He did not think the outcome of the trial would have been different had he hired an expert witness or called Dr. Beasley to testify. He did not think Dr. Beasley's testimony would have been exculpatory. He did not think there was any prosecutorial misconduct during the trial that warranted an issue on appeal.

On redirect examination, trial counsel testified that he thought Ms. Land, the emergency room nurse who treated the victim, was qualified to testify about the victim's injuries. He agreed he objected to her qualifications at the trial but said his research revealed that the issue was not appropriate for appeal. He agreed that before the trial, the victim gave conflicting versions of how her injuries arose but said Dr. Beasley's testifying that the injuries were accidental would not have changed the outcome of the trial. He said that Dr. Beasley was not told that an iron was used on the victim's foot and that if Dr. Beasley was surprised by that fact at the trial, it would have enabled the State to highlight the victim's injuries. He did not think that the Petitioner's bar complaint against him affected his representation of her on appeal.

The trial court denied the petition for post-conviction relief and concluded that the Petitioner failed to establish that trial counsel was deficient or that she was prejudiced by counsel's performance. The court found that counsel met with the Petitioner several times, reviewed the indictment with her, provided her with all the discovery materials, and discussed the witnesses and evidence obtained during discovery. It found that during the meetings with counsel, the Petitioner maintained that she knew nothing about the victim's injuries. The court found that the Petitioner failed to establish how additional meetings with counsel would have benefitted her at the trial. It found that the Petitioner failed to establish that Dr. Beasley's testimony would have been beneficial to her defense. The court found that counsel obtained independent medical advice about the victim's injuries and that counsel did not think an additional medical opinion would have benefitted the Petitioner at the trial. With regard to the appeal, the court found that counsel met with the Petitioner to discuss the appeal and gave her copies of documents she requested. It found that the Petitioner failed to establish that the prosecutor engaged in misconduct during the trial or that the issue was viable on appeal. This appeal followed.

The burden in a post-conviction proceeding is on the Petitioner to prove her allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006); Dellinger v. State, 279 S.W.3d 282, 294 (Tenn. 2009). Once a petitioner establishes the fact of counsel's errors, the trial court must determine whether those errors resulted in the ineffective assistance of counsel. Dellinger, 279 S.W.3d at 293; see Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).

On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2006).

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland, 466 U.S. at 687. A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). See Baxter, 523 S.W.2d at 936. Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon

adequate preparation. <u>Hellard v. State</u>, 629 S.W.2d 4, 9 (Tenn. 1982); <u>see</u> <u>DeCoster</u>, 487 F.2d at 1201.

## I

The Petitioner contends that trial counsel rendered ineffective assistance by failing to meet with her or discuss the nature of the charges and her potential defenses. She argues that counsel only met with her once to prepare for the trial. The State contends that the trial court properly denied relief on this ground because the Petitioner failed to establish her claim. We agree with the State.

The Petitioner testified that before the trial, trial counsel discussed her charges with her and wrote her a letter in which he explained the punishment she faced if convicted at a trial. She agreed she received a copy of the indictment. Counsel testified that he met with the Petitioner five or six times to prepare her case and that during these meetings he went over the indictment, gave the Petitioner all the discovery materials he received, went over medical information and the seriousness of the victim's injuries, told the Petitioner what he expected the victim to say at the trial, and discussed in detail the evidence that could be used against her. During their meetings, the Petitioner continually stated that she did not know what happened to the victim. Counsel testified that the only viable defense was to show the Petitioner did not injure the victim. The Petitioner agreed that the defense presented at her request was that she did not injure the victim. Although the Petitioner claims that counsel failed to inform her of other potential defenses, she fails to indicate what additional defenses were available in light of the evidence in the case. The record does not preponderate against the trial court's findings that counsel met with the Petitioner numerous times before the trial, informed her of the charges, and discussed the evidence that could be used against her at the trial.

## II

The Petitioner contends that trial counsel rendered ineffective assistance by failing to call an expert witness at the trial to contest the issue of serious bodily injury. The State contends that the Petitioner failed to establish that counsel was deficient because she did not present expert proof regarding the seriousness of the victim's injuries at the post-conviction hearing. We agree with the State.

Although the Petitioner claims that the jury "could have" reached a different result had trial counsel called an expert witness to contest the issue of serious bodily injury, the

Petitioner did not offer proof at the post-conviction hearing of what an expert would have said regarding the victim's serious bodily injury. The Petitioner had the burden to prove her claim by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). This court cannot speculate on what Dr. Beasley or an alternate expert witness would have said regarding whether the victim suffered serious bodily injury. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) ("When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing."). Furthermore, counsel testified that he had a doctor review the victim's medical records before the trial and that the doctor told him the victim suffered serious bodily injury.

## III

The Petitioner contends that trial counsel rendered ineffective assistance by failing to raise an issue of prosecutorial misconduct on appeal. The State contends that the Petitioner has failed to establish that counsel was deficient because the Petitioner has cited nothing to support her claim that she would have prevailed on appeal and therefore cannot establish that she was prejudiced by counsel's performance. We agree with the State.

The Petitioner has not established that the prosecutor's show of emotion was egregious or pervasive throughout the trial. She has not established that there was conduct amounting to prejudicial prosecutorial misconduct that counsel should have pursued in the trial court or on appeal. The Petitioner also cites nothing to establish that she would have been successful had counsel raised the issue on appeal. The Petitioner had the burden to prove her claim by clear and convincing evidence. T.C.A. § 40-30-110(f). The record does not preponderate against the trial court's finding that the Petitioner failed to establish that the prosecutor engaged in misconduct during the trial or that the issue was viable on appeal.

We conclude that the trial court did not err in concluding that the Petitioner failed to establish that trial counsel's performance was deficient or prejudicial. In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE